### In the Matter of DELTA FOOD PROCESSING CORPORATION, Bankrupt.
### No. GBK 7046–S.

United States District Court,
N. D. Mississippi,
Greenville Division.
March 8, 1974.

---

See also, D.C., 363 F.Supp. 382.

H. M. Ray, U. S. Atty., Oxford, Miss., for the United States.

N. W. Overstreet, Jr. of Overstreet & Kuykendall, Jackson, Miss., Charles S. Tindall, Jr., of Lake, Tindall, Hunger & Thackston, Greenville, Miss., for Crown Cork & Seal Co., Inc.

James Robertshaw, Robertshaw, Merideth & Swank, Greenville, Miss., for the Trustee.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on the petition of Wade W. Hollowell, the Chapter X Trustee, for an allowance of fees for himself and his attorney.

After due notice to all creditors and parties in interest the matter was submitted to the court on briefs and oral arguments after an evidentiary hearing at the United States Courthouse in Greenville, Mississippi, on Friday, January 25, 1974.

The record reflects that on April 13, 1970 the court entered an ex parte order herein appointing Hollowell as the Chapter X trustee. Thereafter, on debtor's motion the order was vacated in part, and Hollowell was appointed Receiver pending a hearing on the merits of the

petition for a corporate reorganization of debtor. Hollowell served in that capacity until June 3, 1970 when a second order was entered approving the petition and reappointing Hollowell as the Chapter X Trustee. Hollowell served in that capacity until October 20, 1971, when debtor's estate was transferred to Honorable William Thomas, Jr., the trustee appointed in the straight bankruptcy proceeding which followed the Chapter X proceeding. The proceeding was converted into straight bankruptcy by the court's order of September 16, 1971, when the court determined that the Chapter X reorganization proceeding had failed to produce an acceptable plan for debtor's reorganization.

During his tenure as the Chapter X Trustee, Hollowell was represented by Honorable J. Robertshaw, one of the senior partners in the Greenville, Mississippi law firm of Robertshaw, Merideth and Swank. When the proceeding moved into straight bankruptcy, Robertshaw continued to serve as attorney for the Trustee, Honorable William Thomas, Jr. The estate has been completely liquidated and should be closed within a very short period of time.[1]

Hollowell first presented his application for discharge and for payment of compensation for himself and his attorney to the court on December 13, 1971. Hollowell reviewed the work performed by him and his attorney at length in the application, and attached thereto a statement of extent of the work involved in the Chapter X proceeding. Hollowell's statement reflected that during the period in which he served as trustee he spent in excess of 800 hours in the performance of his duties and that he handled

cash receipts of $502,792.73, of which amount he had disbursed the sum of $325,568.39 under orders of the court. Hollowell's statement itemized the work performed by his attorney in the discharge of his duties to the estate. This itemization reflected the devotion of more than 1389 hours to the affairs of the estate.

The application and its supplement were heard by Honorable Eugene J. Raphael, Referee in Bankruptcy and Special Master, to whom a general reference had been made by the court in the Chapter X proceeding. The United States and Crown Financial Corporation (Crown Financial) filed objections to the application and an evidentiary hearing was held by the Special Master. The Special Master filed his report on September 22, 1972 recommending the entry of an order approving the account and discharging the trustee and cancelling his bond as such, but that the matter of the allowance of fees be deferred until such time as the straight bankruptcy proceeding was ready for final determination.

Upon the coming in of the report, and after a consideration thereof, the court entered its order of September 18, 1973, directing that further hearings on the trustee's application for discharge and allowance of fees be "held in abeyance until such time as the costs and expenses incurred in bankruptcy have been discharged in accordance with 11 U.S.C. 104", and that the trustee amend his application, as required by statute, setting forth the value and amount of compensation claimed by him and his attorney for services rendered in the Chapter X proceeding. The court cancelled its pre-

---

1. At the time of the evidentiary hearing only one matter remained for final disposition, being the trustee's litigation with a creditor who claimed a security interest in certain personal property of the bankrupt estate. The machinery was sold by agreement of the parties and the litigation concerned the proceeds of sale. The creditor prosecuted an appeal from an adverse decision of the district court and the appeal was, at the time, pending in the United States Court of Appeals for the Fifth Circuit. Since the aforesaid hearing the Fifth Circuit has dismissed the appeal. In the Matter of: Delta Food Processing Corporation, Bankrupt, Greyson Company, Ltd., Inc. Appellant v. William Thomas, Jr., Trustee, Bankrupt, No. 73-3443, order of dismissal dated February 21, 1974.

vious order of April 5, 1972, by which the court referred the trustee's final account to the Special Master for hearing in accordance with general reference theretofore made.

The Chapter X Trustee filed his supplemental application for discharge and compensation for himself and his attorney with the clerk on January 11, 1974 and after due and timely notice to all creditors and interested parties, the matter was heard by the court, as aforesaid, on January 25, 1974. The trustee included in his application a request that the court allow his attorney as reasonable compensation for his services as attorney for the Chapter X Trustee an additional sum of $66,800,[2] and the sum of $37,300 as reasonable compensation for services rendered in the straight bankruptcy. The entire requested fee amounts to $120,000. The Trustee claims the allowance of $30,000 as reasonable compensation for his work. The supplemental application is accompanied by the affidavits required by the Bankruptcy Act.

The supplemental application contains a further itemization of the time spent on the affairs of the estate by the attorney, and shows that since the original application the attorney has devoted in excess of 625 hours to the discharge of his duties as attorney for the estate.

The United States and Crown Cork & Seal Company, Inc., (Crown Cork & Seal), an unsecured creditor, filed exceptions to the application. They were afforded a hearing at the time indicated above. Crown Cork & Seal objected to a consideration of the application until proper reporting had been made by the regular trustee and until such time as the costs and expenses of the straight bankruptcy had been discharged in accordance with 11 U.S.C. § 104, and the court's previous order of September 18, 1973, above mentioned. The United States objected to the allowance of the requested fee for the attorney, but did not object to the amount of compensation requested by the Chapter X Trustee. All parties agreed that an order might be entered approving the account of the Chapter X Trustee, and discharging the surety on his bond. This order was, accordingly, entered at the hearing.

Section 104(a), Title II, U.S.C.A., provides in material part:

The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; the fees for the referees' salary fund and for the referees' expense fund; the filing fees paid by creditors in involuntary cases or by persons other than the bankrupts in voluntary cases; . .. . the costs and expenses of administration, . . . and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases and to the bankrupt in voluntary and involuntary cases, as the court may allow: *Provided, however,* That where an order is entered in a proceeding under any chapter of this title directing that the bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any; . . .

The court recognized the force and effect of this statute, when providing in its order of September 18, 1973, that consideration of the application for discharge and allowance of fees for the Chapter X Trustee and his attorney would be held in abeyance "until such time as the costs and expenses incurred

---

2. The Trustee's attorney has secured an interim allowance of $16,000.

in bankruptcy has been discharged in accordance with 11 U.S.C.A. § 104".

In urging the court for an allowance of fees at this time, the Chapter X Trustee and his attorney have shown by the record that the bankrupt estate has been completely liquidated and there only remains the formality of making final tax reports to governmental authorities, before final orders can be entered closing the estate. There has been introduced in evidence the "Final Report" of the straight bankruptcy trustee for the period beginning October 29, 1971, and ending September 30, 1973, prepared by a certified public accountant employed by the Trustee to keep his account. The report shows total assets on hand at the end of the period of $267,186.81, consisting entirely of cash in bank, Certificates of Deposit and United States Treasury Bills. The evidence also reflects that after payment of all costs and expenses of the straight bankruptcy proceeding, except for the compensation of the trustee's attorney, there will be left in the cash account of the trustee for the payment of Chapter X costs and fees, an amount in excess of $200,000.

■ As has been indicated above, Section 104(a) provides that the costs and expenses of administration, and other items of bankruptcy costs not necessary here to mention, shall have first priority of payment. It is provided, however, that certain costs and expenses incurred in an original proceeding in bankruptcy, which may precede a straight bankruptcy, as for example a Chapter X proceeding, such as we have here, shall not be paid until the costs and expenses of the ensuing straight bankruptcy proceedings have been paid. The effect of the statute is to give priority in payment to the costs and expenses of the ensuing bankruptcy where such is ordered by the court under any Chapter of the Bankruptcy Act, other than the one making provision for straight bankruptcy.

The preference given by the statute for the payment of costs and expenses in the ensuing bankruptcy over those incurred in Chapter X proceedings presents no real problem for the court in the action sub judice. The record reflects that there are ample funds in the bankruptcy estate with which to pay the costs and expenses of both proceedings. In fact, there will be some funds left over, which will be paid to the United States under 11 U.S.C. § 104(a)(5) and 31 U.S.C. § 191.[3]

This bankruptcy proceeding has had a protracted and turbulent existence. The court has been called upon in a number of instances to pass upon the actions of its special master. The important issues have been the subject of extended and hotly contested controversies by counsel for the Trustee on the one hand and counsel for the United States and Crown Financial on the other hand. Many hours of the time of the Special Master and of the court have been required to pass upon the issues presented by the parties. An examination of the court

3. The Final Report for William Thomas, Jr., Trustee, hereinbefore mentioned, reflects a cash or equivalent of cash balance of $267,186.81, as of September 30, 1973. Evidence introduced at the hearing tends to show that subsequent additions to the cash account for interest earned and to be earned will increase this amount to a sum in excess of $283,660.42. Wages in the sum of $439.-33, and taxes amounting to $45,897.15 have priority payment along with the costs and administration expenses. The parties are in agreement that there is a sufficient amount of money available to the Trustee with which to pay all Section 104(a)(1) priority claims, including such sums as may be awarded the Chapter X Trustee and the attorney for the estate. The parties agree, also, that there will remain in the cash account, after payment of all Section 104(a)(1) priority debts, a sum of money which will be paid in its entirety to the United States by virtue of 11 U.S.C. § 104(a)(5) and 31 U.S.C. § 191. The claim of the United States is in excess of $800,000.00. It follows from these uncontroverted facts that Crown Cork & Seal, as an unsecured creditor, has no real financial interest in the outcome of the controversy submitted to the court by the application of the Chapter X Trustee.

file will provide mute evidence of the time which has been necessarily incurred in supervising the litigation.

 In the interest of judicial economy, the court feels that the issues presented by the application of the Chapter X Trustee should be now considered and determined. The court is not unmindful of the fact that Honorable William Thomas, Jr. has not made his final account as the trustee in bankruptcy and did not join with the Chapter X Trustee in seeking the allowance of fees for Mr. Robertshaw for services rendered the estate in the straight bankruptcy proceeding. Mr. Thomas appeared, however, as a witness in support of the application of the Chapter X Trustee. Allowance of fees in straight bankruptcy is usually the prerogative of the Referee, subject, of course, to review by the court. The court is, however, authorized by the new Bankruptcy Rules to withdraw any part of a case from a referee at any time and to act himself in the matter.[4] The important matters handled by the attorney for the Chapter X Trustee continued unresolved into the straight bankruptcy, so that, for all practical purpose, the duties performed by him for both trustees were so intertwined and related that consideration is proper to be given for an overall fee for the attorneys services, to be divided by the court as may appear appropriate from the evidence.

This case presents a difficult problem for the court. As is shown by the record, Mr. Robertshaw has devoted a very substantial portion of the time available to him for the practice of his profession over a period of nearly four years to the performance of his duties as attorney for the bankrupt estate. Approximately two-thirds of this time was devoted to the affairs of the estate while the Chapter X proceedings were being conducted; the other one-third

was expended in behalf of the estate during the ensuing bankruptcy. The court is not without guidance, however, in making a determination. The United States Court of Appeals for the Fifth Circuit has recently explored in depth the guidelines which should be used by the district court in fixing reasonable compensation for attorneys. Judge Roney, speaking for the court in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 [dated January 21, 1974], mentioned twelve elements which should be considered in fixing a reasonable fee. These are (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

Johnson v. Georgia Highway Express, Inc., *supra,* involved the allowance of attorney fees by the District Court in a Title VII class action. The action sub judice involves the allowance of fees for a bankrupt trustee and his attorney. There is a distinction between the two. The guidelines in *Johnson* are helpful but not controlling in this action. The Fifth Circuit has spoken, however, in several cases involving the allowance of fees in bankruptcy proceedings.

The court considered the question of the allowance of fees for a Chapter X Trustee and his attorney in Massachusetts Mutual Life Insurance Company v. Brock, 405 F.2d 429 (5th Cir. 1968).

---

4. Rule 102(b) of the Bankruptcy Rules provides:

The district judge may, at any time, for the convenience of parties or other cause, withdraw a case in whole or in part from a referee and either act himself or assign the case or part thereof to another referee in the district.

Judge Simpson, speaking for the panel, said:

> The public interest which is inherent in bankruptcy matters must be considered in awarding fees. The object is to draw a balance to the end that competent trustees and counsel are obtainable in matters of this kind because of the knowledge that they will be fairly compensated. They must not and cannot expect, however, to be overcompensated, for the court must exercise its discretion for the double purpose of fairly treating the trustee and his counsel while at the same time doing equity to the debtor and creditors. 405 F.2d at 432, 433.

The Fifth Circuit, in the case of In Re Bemporad Carpet Mills, Inc., 434 F. 2d 988, 990 (5th Cir. 1970), after citing, with approval, the above quotation from *Brock*, went on to say:

> Several factors inhere in the District Court's award: time spent, the intricacy of the problems involved, the size of the estate, the opposition met, the results achieved. All should be considered in light of the economical spirit of the Bankruptcy Act. (Citations omitted). Of course, there can be no precise, rigid measure of reasonableness; the weight accorded each factor must depend on the circumstances of the particular case. (Citations omitted).
>
> Manifestly the District Court in the instant case utilized both contingency and hourly fees in fixing its award. We are not called upon to approve or disapprove the formula. Our task is to determine the abuse of discretion *vel non* of the amount of compensation award. We find no such abuse here. 434 F.2d at 990.

The court has determined that he should fix the award for the Chapter X Trustee and the attorney who has represented the estate throughout the proceedings, according to applicable legal standards, as enunciated in *Johnson*, giving due regard to the admonition of *Brock* that the public interest which is inherent in bankruptcy matters should be given due consideration.

■ The Chapter X Trustee has requested an allowance of $30,000. Neither the United States or Crown Cork & Seal made an attack upon the request at the hearing. The trustee's detailed statement, accompanying the application, gives an itemization of the time spent by the trustee in his efforts to effect a reorganization of debtor and in the administration of debtor's affairs. During the period beginning April 13, 1970, and extending through October 20, 1971, a period of approximately 18 months, the Trustee devoted more than 800 hours in the performance of his duties as Trustee. During this period the trustee handled in excess of $500,000, turning over to the ensuing bankruptcy more than $175,000. The Trustee's efforts during this period were devoted to (1) getting debtor back into operation so that funds might be generated for the payment of administrative costs and the "going concern" value of the company might be preserved; (2) the sale of the inventory on hand for the best price obtainable, and (3) the location of an investor willing and able to propose a feasible plan for the reorganization of debtor. The Trustee was successful in some, but not all, of his endeavors.

The Trustee does not base the requested compensation on a fixed hourly amount. He advances the theory that he should be compensated on a scale which bears some reasonable relationship to the amount of compensation paid by similar corporate enterprises to their chief executives. In Re Westec Corp., 313 F.Supp. 1296, 1300 (S.D.Texas, 1970). In support of this argument he calls the court's attention to the fact that prior to the institution of the bankruptcy proceedings, the annual salary of debtor's executive vice president was $25,000. He also advances the assertion that the salary of the chief executive officer of a comparable corporation should be in the range of $40,000 to $50,000 per year. Using these facts upon which to

base his request, the Trustee takes the position that his request of $30,000 is roughly the equivalent of a $20,000 annual salary for the period of his responsibility, and, is a reasonable amount.

The court has supervised the subject bankruptcy from its inception, and is familiar with the zeal and determination with which the Trustee pursued his objectives. There were many obstacles to a successful reorganization of debtor which the Trustee could not overcome. The Trustee was diligent in the performance of his duties, and is entitled to a reasonable allowance.

The fact that the interested parties, appearing at the hearing in response to the application for allowance of fees, did not see fit to introduce evidence to support an objection to the Trustee's request for his personal award of compensation, does not relieve the court of its responsibility to fix a reasonable allowance. The evidence in the action, and the record, as a whole, convinces the court that Mr. Hollowell's request is reasonable. Accordingly, his fee will be fixed at the sum of $30,000, to be paid as the court directs.

■■ The United States has made a vigorous attack upon the fee suggested as reasonable compensation for the attorney. The United States suggests that the court can very readily determine an average hourly charge for the attorney's work. In this connection, the United States asserts that charges by the attorney for work performed on certain designated dates are not allowable for the reason that the dates involve time spent by the attorney while in attendance upon the court as a witness under subpoena. The grand jury indicted one of the former stockholders of debtor, and, in the course of the trial, the attorney was subpoenaed as a witness for both sides. The time spent by him in answer to the subpoena appears on his time sheet. The amount of time involved is minimal, amounting to less than 60 hours. The court agrees with the United States on this issue. The time should not be considered in fixing the fee to be awarded. Even without considering the hours in question here, Mr. Robertshaw's time sheet shows that the time devoted by him on the business of the estate approximates 2000 hours. When the time which Mr. Robertshaw will be required to devote in closing the estate is considered, the correct time may well be in excess of the hours mentioned. The court has determined that it is appropriate to fix a lump sum fee for Mr. Robertshaw, rather than to compute the fee at an hourly rate. Thus, the time element, though material and highly important, need not be exact.

At the inception of the Chapter X proceeding there appeared to be no free assets to which the trustee or his attorney could look as a source of funds for payment of fees and administrative expense. All assets appeared to be under a pledge or lien for use of certain secured creditors. The compensation of the Chapter X Trustee and his attorney was, therefore, contingent upon the invalidation of some or all of the lien instruments. Mr. Robertshaw, after extended and complex litigation, succeeded in freeing the inventory and certain of the personal property from the asserted liens. The value of these assets was $586,544.99. The valuation is based upon the amount realized in the disposition of the assets. Mr. Robertshaw received the assistance of the United States in making such recovery. It was through their joint efforts that success was attained.

The court need not go into a detailed discussion of the many issues which became involved in this bankruptcy case. Suffice to say, the record reflects that the issues were many; that they were complex, and that they required the services of an experienced and able attorney.

Mr. Robertshaw and the members of his firm enjoy an extensive practice in all fields of the law. With the exception of approximately five years spent in the Armed Services, Mr. Robertshaw has

been engaged in the practice of law since 1940 at the Greenville, Mississippi Bar. He enjoys an enviable reputation and is a respected, qualified, experienced and able attorney. The subject bankruptcy proceedings proved to be complex and difficult of administration. Mr. Robertshaw performed his duties promptly and efficiently, and his efforts, to a large extent, were crowned with success. During the period in which he served the estate, a substantial portion of his time was devoted to the performance of his duties as the attorney for the Trustee. During this period, as in any law firm, Mr. Robertshaw's account was charged with the pro rata part of the overhead attributable to his office.

In fixing the overall fee for Mr. Robertshaw, the court takes into consideration ten of the twelve elements given as guidelines by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., *supra,* excluding only the "undesirability" of the case, and the nature and length of the professional relationship with the client, neither of which are relevant in this case. The court places special emphasis on the experience, reputation and ability possessed by Mr. Robertshaw; the success of his efforts; the contingent nature of the compensation; the time and labor required in the performance of the work; the novelty and difficulty of the questions to be solved; the customary fee for similar work in the community; and the awards made in similar litigation within the Fifth Circuit. All of this has been considered in light of the record before the court, and the duty imposed on the court to take into consideration the public interest which is inherent in bankruptcy matters.

After giving full consideration to all the matters above mentioned, the court is of the opinion and so finds that an overall fee of $90,000 is fair and reasonable, and such an allowance will be made.

The court has concluded that two-thirds or $60,000 of the fee should be chargeable to the Chapter X proceeding.

An interim allowance of $16,000 has been made, and Mr. Robertshaw has been paid this sum. Consequently, the balance of $44,000 will be paid as may be directed in the court's order to accompany this memorandum.

The straight bankruptcy proceeding is chargeable with $30,000 of the fee, and this will be paid in accordance with the court's order.