SIMPSON, Circuit Judge:
This appeal challenges the fee awarded the attorney for the operating receiver in a Chapter XI bankruptcy proceeding. We reverse and remand for further proceedings.
*350 On December 2, 1976 Braswell Motor Freight Lines, Inc. filed a voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act. 11 U.S.C. §§ 701-99 (1976) (repealed 1978).[1] The bankruptcy judge entered orders appointing John Spickerman as operating receiver and appellee, William T. Burke, as attorney for the operating receiver. Yellow Freight Systems, Inc., learned of Braswell’s bankruptcy proceedings and by February 28, 1977 had entered into contracts to purchase all of Braswell’s stock. In these contracts Yellow Freight agreed to pay all of the claims against Braswell and all of the costs of administration in bankruptcy. On July 20, 1977 the bankruptcy court confirmed a plan of arrangement providing for a 100% payment of all creditor claims and for compensation to the shareholders for their stock in the amount of $15,500,000, payable over a two year period.
Appellee Burke applied for $143,800 as his fee for serving as attorney for the operating receiver. The bankruptcy court heard extensive evidence concerning the application on October 20, 1977. Two expert witnesses chosen by the court testified that there was confusion concerning the role of the attorney for the operating receiver and that the fee application included time spent performing functions that are normally the duty of the operating receiver, not his attorney. One recommended a fee of $113,-800. This sum reflected an approximate ten percent reduction for time spent performing receiver duties and an approximate five percent reduction for time spent preparing the fee application. The other expert witness recommended a fee between $100,000 and $120,000. He opined that the attorney for the operating receiver could not be faulted for the bankruptcy judge’s failure to define the attorney’s duties.
At the end of the hearing the bankruptcy judge stated that he may have been responsible for Burke’s failure to stay within his boundaries as attorney for the operating receiver because of statements he made to Burke at the time of appointment. Note 2, infra. He then awarded a fee of $115,000 and said that included therein was the fifteen percent reduction for non-compensable activities recommended by the expert witness. Braswell appealed to the district court. Six months later, and contemporaneous with transmission of the record on appeal, the bankruptcy judge filed a memorandum opinion explaining the award. The district court affirmed.
In spite of the ten percent reduction for performing duties of the operating receiver, the record leads us to conclude that a portion of the award likely included services for non-professional services in violation of Bankruptcy Rule 219(c)(3).
Although bankruptcy judges have “broad discretion in determining” appropriate attorneys’ fees in bankruptcy proceedings, we will reverse the award where that discretion is abused by “failing to apply proper legal standards and follow proper procedures in making the determination ... or by basing the award upon findings of fact that are clearly erroneous.” Matter of First Colonial Corp. of America, 544 F.2d 1291, 1298 (5th Cir. 1977) (citations omitted), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388. The bankruptcy judge failed to apply the proper legal standard in two instances.
Bankruptcy Rule 219(c)(3) very clearly states that “[cjompensation may be allowed an attorney only for professional services.” 11 U.S.C.A. Rule 219(c)(3). Burke’s fee application and his testimony, the documentary evidence, the testimony of the expert witnesses, and the statements and memorandum opinion of the bankruptcy judge all reveal that a substantial portion of Burke’s time claimed was not spent rendering professional services. For example, Burke testified that he acted as a “quasi-Receiver”. Record, vol. IV at 133-35, 144 — 15. Both expert witnesses testified that Burke spent time on activities normally performed by *351 the operating receiver. Perhaps most significantly, the bankruptcy judge acknowledged that he may have caused Burke’s venture into the domain of the operating receiver and that he felt responsible for Burke’s overreaching.[2]
Of course the bankruptcy judge did state that the fee only covered professional services and he did apply a fifteen percent reduction factor. Unfortunately, the record does not provide any solid support for that figure and does not reveal whether the proscription found in Bankruptcy Rule 219(c)(3) has been violated. When the attorney for the operating receiver has clearly claimed compensation for time spent performing professional and non-professional services the bankruptcy court is required to cull the non-professional time to insure that the attorney is compensated only for professional services. The bankruptcy judge can, in turn, place this burden on the attorney claiming the fee. Cf. In Re Orbit Liquor Store, 439 F.2d 1351, 1354 (5th Cir. 1971) (holding that where an attorney serves as trustee and attorney for the trustee in a bankruptcy proceeding the attorney must distinguish time spent in each role). In the instant case Burke admitted that he had not even attempted to determine how much time was spent performing receiver duties.
The bankruptcy judge also failed to apply the correct legal standard by adopting the approximate five percent reduction in the fee for time spent preparing the fee application. This court has recently held that since a detailed fee application is required by the court, the attorney is entitled to a reasonable fee for preparing the application. Rose Pass Mining, Inc., v. Howard, supra, 615 F.2d at 1093. It was an abuse of discretion to deny a reasonable fee for preparation of the fee application.
*352 Appellant claims that the fee is excessive. The bankruptcy judge stated that he was awarding a fee of approximately $100 per hour. In a situation like the instant case where skillful management of the bankrupt estate has led to a favorable result, we cannot say that a fee of $100 per hour is excessive. See id. at 1092 (approving a $100 per hour award to an experienced bankruptcy attorney). However, the judge’s statement that the award equaled $100 per hour is clearly erroneous. Burke claimed $133,800 for 1123.4 hours which is an hourly rate in excess of $120. That award was purportedly reduced by fifteen percent to eliminate non-compensablé time. A fifteen percent reduction reduces the total hours to 954.9 and the court awarded $115,000, which is an hourly rate also in excess of $120 per hour.
There are three instances of abuse of discretion by the bankruptcy judge. Under these circumstances the district judge abused his discretion by affirming the award. We reverse and remand for further proceedings consistent with the principles discussed above.
REVERSED AND REMANDED WITH INSTRUCTIONS.

. This case is governed by the old Bankruptcy Act, (repealed Nov. 6, 1978 by Pub.L. 95-598, 92 Stat. 2549) because it was commenced under that Act. Id. § 403(a), 92 Stat. 2683; Rose Pass Mines, Inc. v. Howard, 615 F.2d 1088, 1090 n. 5 (5th Cir. 1980).

. At the end of the evidentiary hearing the bankruptcy judge stated:
Now, we come to Crutcher, Burke and Newsom and this is the one that is the most agonizing because I feel like I’m somewhat to blame in this case; maybe completely to blame for the misunderstanding that has arisen between these fine lawyers ....
[I] feel like I may have been responsible for the lawyers having this difficulty because I called Burke out of this Creditors’ Committee and told him that I wanted him to get off of that job and to spend his time looking after this case for the Court; that we had all of these problems in the case. We had Spickerman, who probably was a good Operator but he didn’t know anything about Bankruptcy; didn’t know anything about him and that we had these labor problems and lawsuits and we had a old run-down truck line with probably a lot of assets there, that if we can work altogether, that probably the Creditors would realize their debts payment in full or substantially so and have something left over for the Debtor, and by the time that we had this meeting, I had gotten to know Jody Braswell a little better and learned a little more about him and I had determined it would be impossible for the company to be reorganized with Jody at the helm and I told him he had to get out, we were going to appoint a Receiver and in a conference we had and that we would be glad to have him recommend somebody which he did.
But, that’s the atmosphere in which we were talking when I was talking with Burke and I said, “Now, I want you to do all the paperwork in this case. You know what you’re doing and I want you to handle everything until the end of the case and we ought to have enough money to see that you get a good fee in this case.”
Now, that’s what I told him and when he was talking with Steve or talking with Tom or somebody, he may have gone a little overboard in trying to do what he felt like that he was supposed to do in the case because of the way I phrased it; was-.would take into consideration filing of the Plan and doing the auditing and everything because I said, “I’m holding you responsible for it.”
So, I think, probably, that it’s my fault that Bill got involved to the extent he did with other lawyers. Because he’s been working around here a long time. As far as I know he’d never had any trouble that way before.
Record vol. V at 312-14.
In his memorandum opinion the bankruptcy judge stated:
When Yellow Freight came on board, they required many services of these Attorneys, much of thich [sic] was more of an administrative than legal nature, The Attorneys rendered those services competently, efficiently and with good economy of time and motion. As Mr. Mahon stated, the attorneys .. . “cannot be charged for the failure to define the roles and the failure to see that every hat was over a proper person . .. ”.
Record vol. II at 258.