**In the Matter of FIRST COLONIAL CORP. OF AMERICA, Bankrupt.**

**AMERICAN BENEFIT LIFE INSURANCE COMPANY et al., Appellants-Cross-Appellees,**

v.

**Franz J. BADDOCK, Trustee, Appellee-Cross-Appellant.**

**In the Matter of FIRST COLONIAL CORP. OF AMERICA, Bankrupt.**

**Bert K. ROBINSON, Appellant,**

v.

**AMERICAN BENEFIT LIFE INSURANCE COMPANY et al., Appellees.**

**Nos. 75–2260, 75–2644.**

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1977.
Rehearing Denied Feb. 2, 1977.

proceeded to the police station and asked for the money.

Floyd J. Falcon, Jr., Baton Rouge, La., Joe T. Pilcher, Jr., Selma, Ala., for American Benefit Life Ins.

Bert K. Robinson, W. P. Wray, Jr., Erwin A. La Rose, Baton Rouge, La., for Baddock.

R. Boatner Howell, Jr., pro se.

Franz Joseph Baddock, pro se.

Martin C. Schroeder, Jr., James F. Pierson, Jr., Baton Rouge, La., for appellee-cross-appellant in No. 75–2260 and appellant in No. 75–2644.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

CLARK, Circuit Judge:

These appeals challenge awards of priority fees made by the bankruptcy judge[1] to the attorneys for the trustee and a petitioning creditor from the bankruptcy estate. In No. 75–2644, Robinson, an attorney for the trustee, complains that the bankruptcy judge should have been more generous. In No. 75–2260, American Benefit Life Insurance Company [American Benefit], which owns fifty-five percent of the outstanding stock of the bankrupt, First Colonial Corporation of America [First Colonial], attacks the fees awarded to all of the attorneys on the grounds that they are excessive.[2] Both appellants also argue that the bankruptcy judge failed to apply the requisite standards and follow proper procedures in determining the amounts of the fee awards. Baddock, the trustee in bankruptcy, who also served as an attorney for the trustee,

---

1. In this context the term "bankruptcy judge" means the referee of the court of bankruptcy. R. Bankruptcy Pro. 901(7).

2. On July 14, 1975, a panel of this court dismissed the appeals of Fournet, the receiver for First Colonial, de la Barre, on behalf of First Colonial, and Brookout, the receiver for Alabama Life Insurance Company, for lack of standing and failure to file an appeal bond.

cross-appeals in No. 75–2260, contending that he deserves a larger fee. When these objections were raised before the district court, he dismissed the appeals for lack of standing and, in the alternative, affirmed the orders of the bankruptcy judge. We reverse.

First Colonial was adjudged bankrupt September 8, 1970, on the basis of an involuntary petition filed by Baddock and Pierson earlier that year.[3] The examination was lengthy and complex. Because it appeared that First Colonial possessed viable causes of action against several corporations and private individuals, Baddock, in his capacity as trustee in bankruptcy, petitioned the bankruptcy judge for the appointment of an attorney to prosecute the plenary suits. When he encountered difficulty in obtaining the services of a single attorney willing to handle all of the claims, Baddock sought the appointment of several attorneys for specific purposes. The bankruptcy judge subsequently approved the applications of four attorneys recommended by Baddock—Robinson, Howell, La Rose, and Baddock himself—to serve as attorneys for the trustee.

After approximately two years of discovery and pre-trial maneuvering, the plenary suits were consolidated for trial. On June 28 and July 1, 1974, shortly after the trial had begun, the district court directed the trustee to settle all of the bankrupt's claims for $600,000. Although the trustee and his attorneys strenuously objected because they believed that a much larger recovery would result if the cases proceeded through trial, the district court concluded that further prosecution of the suits would not benefit the creditors and that failure to accept the settlement promptly would delay, and possibly place in jeopardy, receipt by the estate of an asset sufficient to satisfy all of the claims timely filed by creditors.

On July 7, 1974, American Benefit moved for permission to intervene in the bankruptcy proceeding. No one expressed opposition at that time, and the bankruptcy judge immediately granted the request without affixing any limitations on its right to participate. During the early fall of 1974, the four attorneys for the trustee and the two attorneys for the petitioning creditor petitioned for awards of priority fees as compensation for work performed in connection with the plenary suits.[4] On November 18, American Benefit filed written opposition to the petitions and asked that the bankruptcy judge hold a hearing on the issue of the amount of compensation to be allowed each attorney. Without responding to this request, the bankruptcy judge granted the five petitions for compensation on December 13.[5] With the exception of the name of the petitioning attorney, the date of his

3. First Colonial was abandoned by its officers and board of directors in 1969.

4. Section 62 of the Bankruptcy Act, 11 U.S.C.A. § 102 (1953), authorizes the award of compensation from the bankrupt estate to officers (including attorneys for the trustee and petitioning creditors) who assist in the administration of the estate. Section 64, 11 U.S.C.A. § 104 (1953), gives costs and expenses incurred in connection with the administration of the estate priority over other debts of the bankrupt.

5. The awards were as follows:

| ATTORNEYS FOR THE TRUSTEE | HOURS CLAIMED | AMOUNT REQUESTED | AMOUNT AWARDED | HOURLY RATE |
|---|---|---|---|---|
| Baddock | 3922.0 | $159,680 | $125,000 | $31.31 |
| Howell | 1211.5 | 121,150 | 100,000 | 82.54 |
| LaRose | 300.0 | 10,500 | 10,500 | 35.00 |
| Robinson | 1704.2 | 226,605 | 125,000 | 73.35 |
| ATTORNEYS FOR THE PETITIONING CREDITOR | | | | |
| Baddock and Pierson | [none] | 25,000 | 5,000 | * |

\* Their hourly rate cannot be computed because they did not state the number of hours they worked in this capacity.

appointment, and the amount awarded, the five orders are identical.[6] They contain no explanation of the basis for the awards. American Benefit moved for a stay of the orders pending appeal. On December 31, the bankruptcy judge denied the motion on the ground that American Benefit lacked standing to appeal. Robinson and American Benefit then attacked the awards in the district court. After a brief hearing, the district court ruled on April 23, 1975, that (1) since none of the parties were creditors they had no standing to appeal from the fee awards, and (2) alternatively, if they had standing, that the bankruptcy judge had not erred in determining the size of the awards. Robinson and American Benefit challenge these two rulings in their appeals.

## STANDING

Section 39(c) of the Bankruptcy Act, 11 U.S.C.A. § 67(c) (1968), provides that a "person aggrieved" by an order of a bankruptcy judge may appeal from the order to a district court. Section 25(a) of the Act, 11 U.S.C.A. § 48(a) (1953), states that an "aggrieved party" may appeal to a court of appeals from a district court order entered in connection with a bankruptcy proceeding. The rule in this circuit is that only those who have a "direct and substantial interest in the question appealed from" are "aggrieved" within the meaning of Section 25(a). *In re American Bonded Mortgage Co.*, 453 F.2d 528, 530 (5th Cir. 1971); *Edell v. Di Piazza*, 345 F.2d 336 (5th Cir.), *cert.*

*denied*, 382 U.S. 931, 86 S.Ct. 322, 15 L.Ed.2d 342 (1965). Since the term "person aggrieved" in Section 39(c) is less restrictive than the term "aggrieved party" in Section 25(a), if Robinson and American Benefit can establish their right to appeal under Section 25(a), it would follow both that the district court erred in holding that they had no standing to appeal from the orders of the bankruptcy judge and that they possess standing to challenge the district court's order in the court of appeals.

Since Robinson's fee was set by the bankruptcy judge, he obviously had a direct financial interest in the size of the award. Under *Edell v. Di Piazza, supra,* this interest is sufficient to permit him to appeal from the order fixing the amount of his fee. We have entertained similar appeals by attorneys for a trustee in bankruptcy in the past. *See In re Bemporad Carpet Mills, Inc.,* 434 F.2d 988 (5th Cir. 1970).

Unless American Benefit possesses standing to challenge the other fee awards, only the reasonableness of the fee awarded to Robinson would be properly before us. The attorneys for the trustee, and the trustee himself, contend that American Benefit is not an "aggrieved party" within the meaning of Section 25(a). They argue that to permit American Benefit to appeal would be to allow any shareholder to challenge dispositions of assets affecting only the bankruptcy fund, and that such a rule would seriously interfere with the trustee's

---

**6.** The order awarding compensation to Robinson reads as follows:

ORDER FOR PAYMENT OF COMPENSATION TO ATTORNEY FOR TRUSTEE

Upon the annexed application of Bert K. Robinson, and it appearing therefrom that he has duly performed extensive and most valuable professional services as an attorney for the trustee pursuant to an order of this Court, made and entered on April 18, 1972, and, after due consideration, good cause appearing therefor, and notice (which would otherwise be required by § 58a(8) of the

Bankruptcy Act and Rule 203(a)(6) of the Rules of Bankruptcy Procedure) and hearing being deemed unnecessary because all creditors herein have been paid and fully satisfied, IT IS ORDERED that the compensation for the services rendered by such attorney be and it hereby is fixed at the sum of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00).

IT IS FURTHER ORDERED that the trustee herein pay said attorney the sum so fixed, in full payment of his services as such attorney.

administration of the estate. Although the attorneys and the trustee are correct in stating that in the usual case the bankrupt and its shareholders do not have an interest in the disposition of the assets of the estate because Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110 (1963 & Supp.1976), vests title to those assets in the trustee, *see, e. g., Edell v. Di Piazza, supra,* this is hardly the usual case. In *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d 429 (5th Cir. 1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969), we recognized that the interests of the bankrupt and the interest of those administering the estate diverge when the amount of the latter's compensation is at issue. In such circumstances it is the duty of the district court to "exercise its discretion for the double purpose of fairly treating the trustee and his counsel while at the same time doing equity to the debtor and creditors." *Id.* at 433. This duty cannot be adequately discharged unless representatives of the various interests are permitted to bring them to the attention of the court.

■ The possibility that we might create a dangerous precedent by allowing American Benefit's appeal is overdrawn. Here we have: (1) an involuntary bankruptcy proceeding in which (2) all claims timely advanced by creditors have been satisfied, and in which (3) the bankrupt is not insolvent. Thus the size of the awards of attorneys' fees directly affects the amount of residual assets available for return to the bankrupt and its shareholders upon the termination of the proceeding. In addition to these three factors, (4) the bankrupt has been abandoned by its officers and board of directors, and (5) the trustee has a personal financial stake in the disposition of a substantial portion of the controversy which is adverse to that of the bankrupt. In these circumstances, we refuse to allow the trustee to rely upon the general rule that he is the proper party to proceed on behalf of the whole community of interests of the bankrupt. *See In re York International Building, Inc.,* 527 F.2d 1061, 1077 (9th Cir. 1973).

Rule 215(e) of the Rules of Bankruptcy Procedure provides that the court may authorize the trustee to act as his own attorney where such authorization is in the best interests of the estate. There is, therefore, no inherent impropriety in such an arrangement. But the rule does not resolve the problems that may arise when a trustee-attorney's personal interest in the amount of compensation he receives in exchange for his services as attorney leads him to take a position adverse to that of the bankrupt and its shareholders whose interests he is charged with protecting in his role as trustee. Where the trustee serves as his own attorney there is no disinterested trustee to ensure that the attorney is paid only for professional services necessary to the administration of the estate. In this situation it is unseemly, to say the least, for a trustee-attorney to urge on appeal, first, that the compensation he was awarded for furnishing legal services to the bankrupt estate should be increased, and second, that the bankrupt and its shareholders have no standing to object to the amount of that compensation because the Bankruptcy Act makes safeguarding their interests his responsibility.

■ In addition to refusing to permit Baddock to use his position as trustee to prevent American Benefit from contesting the size of his attorneys' fee, we also hold that American Benefit has standing to appeal from all of the fee awards because the bankruptcy judge granted its motion to intervene without qualifying its right to participate in the proceeding. Rule 724 of the Rules of Bankruptcy Procedure reaffirms the principle that Rule 24 of the Federal Rules of Civil Procedure governs intervention in bankruptcy proceedings. *See generally Securities and Exchange Commission v. United States Realty & Improvement Co.,* 310 U.S. 434, 459, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293, 1305 (1940). To the extent that the Rules of Bankruptcy Procedure are inconsistent with provisions of the Bankruptcy Act, those portions of the statute are superseded. 28 U.S.C.A. § 2075 (Supp.

1976). Since an intervenor is bound by future orders, 3B J. Moore & J. Lucas, Moore's Federal Practice ¶ 24.16[6], at 24–671 (2d ed. 1975), it may appeal from an appealable order unless the intervention has been specially limited to forbid it. *Securities and Exchange Commission v. United States Realty & Improvement Co.,* 310 U.S. at 460, 60 S.Ct. at 1055, 84 L.Ed. at 1306; *Texas v. Anderson, Clayton & Co.,* 92 F.2d 104, 106 (5th Cir.), *cert. denied,* 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578 (1937); 7A C. Wright & A. Miller, Federal Practice & Procedure, § 1920, at 611 (1972). It follows that American Benefit had standing to challenge in the district court all of the orders of the bankruptcy judge awarding fees to the attorneys for the trustee, and that it has standing to appeal in this court from the district court's order approving the awards. *Klein v. Nu-Way Shoe Co.,* 136 F.2d 986 (2d Cir. 1943). Thus all five of the fee awards have been properly brought before us for review.

## ATTORNEYS' FEES

■ Because the lower court "has a far better means of knowing what is just and reasonable than an appellate court can have," *Trustees v. Greenough,* 105 U.S. 527, 537, 26 L.Ed. 1157, 1162 (1881), district courts and bankruptcy judges have broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings, and their exercise of that discretion will not be disturbed by an appellate court absent a showing that it was abused. *In re Bemporad Carpet Mills, Inc.,* 434 F.2d at 989; *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d at 432; *Calhoun v. Hertwig,* 363 F.2d 257, 261 (5th Cir. 1966), *cert. denied,* 386 U.S. 966, 87 S.Ct. 1047, 18 L.Ed.2d 116 (1967); *See* 3A J. Moore & L. King, Collier on Bankruptcy ¶ 62.12[4] (14th ed. 1975). The fact that much of the work for which the attorneys for the trustee desire compensation was performed before a special master appointed by the district court to hear the plenary suits, and not before either the bankruptcy judge or the district court, does not change the scope of review. But in awarding attorneys' fees under these conditions the bankruptcy judge and the district courts "should be particularly diligent in setting forth the facts that support [their] conclusion." *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166 n. 9 (3d Cir. 1973).

■ We are especially reluctant to interfere in this case since the bankruptcy judge and the district court are in agreement. *Blanch v. Rankin,* 291 F.2d 217, 219 (5th Cir. 1961); *Campbell v. Green,* 112 F.2d 143, 144 (5th Cir. 1940). But bankruptcy judges and district courts may abuse their discretion either by failing to apply proper legal standards and follow proper procedures in making the determination, *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d at 432; *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d at 166, or by basing the award upon findings of fact that are clearly erroneous. *Monson v. First National Bank of Bradenton,* 497 F.2d 135, 137 (5th Cir. 1974); *see Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d at 432. Since we hold that the bankruptcy judge and the district court failed to employ the requisite standards and procedures in awarding attorneys fees, we do not examine the soundness of their findings of fact. Nor do we reach the question of whether the amounts awarded were reasonable.

■ In order to establish an objective basis for determining the amount of compensation that is reasonable for an attorney's services, and to make meaningful review of that determination possible on appeal, we held in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19, that a district court must consider the following twelve factors in awarding attorneys' fees:

(1) The time and labor required; (2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

Although *Johnson* involved a suit brought under 42 U.S.C.A. § 2000e *et seq.*, the guidelines we established there are equally useful whenever the award of reasonable attorneys' fee is authorized by statute.[7] *See Miller v. Mackey International, Inc.,* 515 F.2d 241, 242 (5th Cir. 1975) (federal securities); *Ward v. Kelly,* 515 F.2d 908, 912 (5th Cir. 1975) (school desegregation); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) (labor); *see also Jacobowitz v. Double Seven Corp.,* 378 F.2d 405, 408 (9th Cir. 1967) (bankruptcy). *But see In re Delta Food Processing Corp.,* 374 F.Supp. 76, 81 (N.D.Miss.1974) (bankruptcy).

Proper application of these guidelines in the bankruptcy context requires that at least two additional considerations be kept in mind.

 First, the strong policy of the Bankruptcy Act that estates be administered as efficiently as possible demands recognition. *See In re Bemporad Carpet Mills, Inc.,* 434 F.2d at 990; *Texas Bank & Trust Co. v. Crippen,* 235 F.2d 472, 476 (5th Cir. 1956). Indeed it has been suggested that "[e]conomy is the most important principle" to be considered in awarding fees to the attorneys for the trustee. 3A J. Moore & L.

King, Collier on Bankruptcy, ¶ 62.12[5], at 1483 (14th ed. 1975). This does not mean that the bankruptcy judge should be parsimonious—that would be a false economy which would discourage competent counsel from offering their services to trustees in bankruptcy—but rather that he should award an amount which is "at the lower end of the spectrum of reasonableness." *Jacobowitz v. Double Seven Corp.,* 378 F.2d at 404. Since attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court, *Official Creditors' Committee of Fox Markets, Inc. v. Ely,* 337 F.2d 461, 465 (9th Cir. 1964), they should not expect to be compensated as generously for their services as they might be were they privately employed. *In re York International Building, Inc.,* 527 F.2d at 1069; Herzog, *Fees and Allowances in Bankruptcy,* 36 Conn.B.J. 374, 376–77 (1962).

 Second, there are a number of peculiarities of bankruptcy practice—such as the award of ad interim allowances and the possibility that some officers of the court may be furnishing services to the estate in more than one capacity—which could lead to the award of duplicative fees or compensation for non-legal services if overlooked. The Bankruptcy Act forbids such a result. 11 U.S.C.A. §§ 102, 104 (1953 & Supp.1976); R. Bankruptcy Pro. 219.

 Determining a reasonable attorneys' fee is a three-step process. In the first phase, the bankruptcy judge or district court must ascertain the nature and extent of the services supplied by the attorney. To this end, each attorney seeking compensation should be required to file a statement which recites the number of hours worked and contains a description of how each of those hours was spent. *In re Meade Land & Development Co.,* 527 F.2d 280, 283–84

---

7. Section 64(a)(1) ·of the Bankruptcy Act, 11 U.S.C.A. § 104 (Supp.1976) and Rule 219(c)(1) of the Rules of Bankruptcy Procedure provide

that the amount of compensation awarded for the provision of legal services to a bankrupt estate must be reasonable.

(3d Cir. 1975). If there are disputed issues of fact, an evidentiary hearing must be held to facilitate their resolution. *Perkins v. Standard Oil Co.*, 399 U.S. 222, 223, 90 S.Ct. 1989, 1990, 26 L.Ed.2d 534, 538 (1970); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d at 169–70. Once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services. Because judges are familiar with the fees charged by the legal profession and experienced at gauging the quality of legal work, no expert opinion evidence is required on this issue, though such evidence may be accepted. *Montalvo v. Tower Life Building,* 426 F.2d 1135, 1150 (5th Cir. 1970); *Campbell v. Green,* 112 F.2d at 144. When both of these steps have been completed, and the amount of compensation that is reasonable has been determined, the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in *Johnson* affected his decision. *See In re Orbit Liquor Store,* 439 F.2d 1351, 1353–54 (5th Cir. 1971).

 The bankruptcy judge deviated from the prescribed standards and procedures in three significant respects. First, he neglected to require sufficient documentation of the amount of time spent and the type of work done in each hour for which compensation was requested. Of the four attorneys for the trustee, only Robinson explained how he spent each hour. Baddock merely stated that he had "expended a minimum of 3,992 hours," and La Rose noted only that he had worked "in excess of 300 hours." In their joint petition for compensation for work performed as attorneys for the petitioning creditor, Baddock and Pierson did not even estimate the total number of hours they spent. This information is insufficient to support the award of fees to all of the attorneys except Robinson. *In re Orbit Liquor Store,* 439 F.2d at 1353, *In re Meade Land & Development Co.,* 527

F.2d at 283–84; *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d at 167. The deficiency is particularly serious where, as here, one person acts as both trustee and attorney for the trustee and fails to clearly distinguish in his petition for compensation between the tasks he performed as attorney and those performed as trustee. *In re Orbit Liquor Store,* 439 F.2d at 1354.

 Second, although American Benefit specifically requested that an evidentiary hearing be held concerning the petitions for priority fees, the bankruptcy judge failed to do so. In addition to his duty to hold such a hearing on his own motion because the petitions for compensation did not adequately develop the factual basis for the awards, he was obliged to hold one when the intervenor requested it. *Cf. Ross v. Bernard,* 396 U.S. 531, 541 n. 15, 90 S.Ct. 733, 740, 24 L.Ed.2d 729, 737 (1970); 3B J. Moore & J. Lucas, Moore's Federal Practice ¶ 24.16[7] (2d ed. 1975); 5 *id.* ¶ 38.38[3]. Third, the bankruptcy judge failed to justify the awards with findings and reasons and did not explain how the twelve factors enumerated in *Johnson* affected his decision. Indeed, we are left to wonder whether the *Johnson* factors were considered at all and whether there is a rational basis for awards that differ so markedly when viewed from the hourly rate perspective.[8]

 Because these deficiencies raise serious questions about the validity of the awards, and because they survived review in district court uncorrected, we hold that the bankruptcy judge abused his discretion in determining the size of the fees, and that the district court abused its discretion in affirming that determination.

 Because the question is likely to recur, we now resolve the issue of how factor 8 of the *Johnson* guidelines should be applied on remand. The attorneys for the trustee contend that the plenary suits were improperly compromised for a fraction of

8. See note 5, *supra.*

their value, and that therefore the bankruptcy judge and the district court should have considered the amount of the recovery which might have been obtained had the cases gone to trial, rather than the money actually received from the settlement, as the "results obtained" for the purpose of awarding attorneys' fees. This argument is without merit in today's case. After consulting with all of the interested parties, the bankruptcy judge found that the $600,-000 settlement offer, which was payable immediately, was more valuable to the creditors of the estate than the potential yield of the plenary suits, once the latter had been discounted by the possibility of failure and the inevitable delay in receipt of the judgment even in the event of victory. Findings of fact by a bankruptcy judge will not be reversed unless they are clearly erroneous. R. Bankruptcy Pro. 810; *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863, 869 (6th Cir. 1974). The attorneys have not met this standard. In addition, services directed toward enhancing the value of the estate beyond the amount required to discharge the bankrupt's obligations to creditors and to cover the costs of administration benefit the bankrupt personally and are not compensable from the estate. *See In re Orbit Liquor Store*, 439 F.2d at 1354; *In re Eastwood*, 239 F.Supp. 847, 851 (D.Or.1965). Accepting the position advanced by the attorneys for the trustee would place the court in the position of compelling an involuntary client to accept and pay for as a "benefit" something it has not requested, that is uncertain in amount, and that has not actually been conferred upon it. Neither Congress in enacting Section 62 of the Bankruptcy Act, 11 U.S.C.A. § 102 (1953), nor this court in deciding *Johnson v. Georgia Highway Express, Inc., supra,* intended such a result.

As this case demonstrates, the determination of what constitutes reasonable compensation for services furnished by an attorney in a bankruptcy proceeding can be a distasteful task. *See Finn v. Childs Co.,* 181 F.2d 431, 435 (2d Cir. 1950). But this possibility does not excuse bankruptcy judges and district courts from conducting the thorough investigation that is necessary if they are to make their determinations properly. They must apply standards and follow procedures which are sufficient to enable them to ascertain what the nature and extent of the services provided by an attorney were, and to accurately assess the value of those services. Where, as here, the standards and procedures employed are not capable of fulfilling these functions, the amount of compensation that is reasonable for the services rendered cannot be determined, and appellate review of the award becomes a meaningless gesture. Accordingly, we reverse the portion of the district court's order which holds that the appellants and the cross-appellant lack standing to appeal, vacate the order insofar as it approves the fee awards, and remand the remainder of this case to the district court with directions to return it to the bankruptcy judge. The district court shall instruct the bankruptcy judge to (1) require the attorneys to submit a statement of the number of hours worked and a description of how each hour was spent, (2) hold an evidentiary hearing in which both the attorneys and American Benefit may participate to resolve all issues of disputed material fact, and (3) redetermine the amount of fees to be awarded in light of the guidelines set forth in *Johnson v. Georgia Highway Express, Inc., supra,* as they are augmented by this opinion for application in the bankruptcy context.

REVERSED IN PART, VACATED IN PART, AND REMANDED.