J. William WOLF et al.,
Plaintiffs-Appellees,

v.

Robert R. FRANK et al.,
Defendants-Appellants,

Mallory H. Horton, as Receiver of
Industrial Guaranty Bancorp.,
Defendant-Appellant,

Continental Casualty Co.,
Movant-Appellant.

No. 75–2226.

United States Court of Appeals,
Fifth Circuit.

July 13, 1977.

Rehearings Denied Aug. 10 and
Aug. 12, 1977.

Robert E. Venney, John H. Gunn, Miami, Fla., for Industrial Guaranty.

Robert R. Frank, pro se.

Irving M. Wolff, Miami, Fla., for Frank, Roberts & Stein.

Steven R. Berger, Miami, Fla., David L. Swimmer, Wesley G. Carey, Miami, Fla., for Continental Casualty.

Eugene C. Heiman, Miami, Fla., for plaintiffs-appellees.

Before TUTTLE, WISDOM and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge:

The District Court allowed the appellees attorneys fees in the sum of $259,611.50 for professional services rendered to the prevailing parties in a stockholders derivative action. The appellants say that the allowance was excessive. Appraising the record as a whole, and applying the legal principles which govern the matter, we agree.

We modify the Judgment of the District Court, affirm it as modified, and remand the case for compliance herewith.

Reference to the reported cases impressively demonstrates the increased burden being imposed on the federal appellate courts by disputes concerning the size of court-awarded attorneys fees. See the appendix to this opinion. In numerous cases the Fifth Circuit has elaborated upon situations justifying awards and has repeatedly enunciated the standards for ascertaining the appropriate amount of such an award.

It is black letter law that where such fees are due the amount to be fixed as *reasonable* is left to the sound discretion of the trial court, *Electronics Capital Corporation v. Sheperd*, 5 Cir. 1971, 439 F.2d 692, 693. It necessarily follows that such an award may not be set aside in the absence of an abuse of discretion, *Weeks v. Southern Bell Telephone and Telegraph Co.*, 5 Cir. 1972, 467 F.2d 95, 97. Even more to the point, this Court has laid down the principle that in the absence of such an abuse it "matters not what we might have done if this were a case in which we were called upon to approve or confirm a fee in the exercise of our independent discretion", *Nowell v. Dick*, 5 Cir. 1969, 413 F.2d 1204, 1210.

Despite the firmness with which these principles have been laid down, disputes about attorneys fees continue to come to us in ever increasing numbers. This prompted our detailed opinion in *Johnson v. Georgia Highway Express, Inc.*, 5 Cir. 1974, 488 F.2d 714, in which we set forth no less than twelve items to be *considered* by trial courts in fixing the amount of court-awarded attorneys fees. In the very recent case of *Rainey v. Jackson State College*, 5 Cir. 1977, 551 F.2d 672, this checklist was specifically reiterated and reaffirmed.[1]

One would suppose that with the road so clearly marked there would be little occasion for this Court to be further involved in prescribing the compensation for services rendered in those cases where the law authorizes the allowance of discretionary fees. One is even more emphatically impressed with such a feeling when it is remembered that the guidelines laid down in *Johnson v. Georgia Highway Express, Inc.*, *supra*, made no change in the law theretofore existing in this Circuit. *See Ranger Insurance Company v. Algie*, 5 Cir. 1973, 482 F.2d 861; *Weeks v. Southern Bell Telephone and Telegraph Co.*, *supra*; *Clark v. American Marine Corporation*, 5 Cir. 1971, 437 F.2d 959; *Electronics Capital Corporation v. Sheperd*, *supra*.

---

1. (1) The time and labor required,
 (2) The skill requisite to properly perform the legal services,
 (3) Preclusion of other employment by the attorney due to acceptance of the case,
 (4) The novelty and difficulty of the questions presented,
 (5) The customary fee,
 (6) Whether the fee is fixed or contingent,
 (7) Time limitations imposed by the client,
 (8) The amount involved and the results obtained,
 (9) The experience, reputation and ability of the attorneys,
 (10) The undesirability of the case,
 (11) The nature and length of the professional relationship with the client,
 (12) Awards in similar cases.

The pertinent facts of the case presently before us were well developed in our prior decision, *Wolf v. Frank*, 5 Cir. 1973, 477 F.2d 467, *reh. den.* 478 F.2d 1403, *cert. den.* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218, *reh den.* 414 U.S. 1104, 94 S.Ct. 739, 38 L.Ed.2d 560. In that earlier appeal, concerning a judgment for the plaintiffs in the sum of $557,613.56, we instructed the District Court to

> determine the amount of attorneys' fees and expert witness fees reasonably incurred by plaintiffs in maintaining the derivative claims on behalf of IGB [Industrial Guaranty Bancorp]

477 F.2d at 480. IGB was to reimburse the plaintiffs in whatever amount so found.

The argument here is not whether a fee should have been awarded. The controversy rages, and we use that term in its literal sense, over the amount of the fee.

On remand, numerous affidavits were filed by plaintiffs' attorneys relative to their claim for attorneys fees. The January 7, 1974, affidavit of Eugene Heiman requested a fee of 50% of the amounts recovered and paid over to IGB's receiver. He based this on the following stated considerations.

(1) The firm expended in excess of 1,500 hours on the case and not less than 90% of the time was spent on the derivative claims;

(2) There were numerous and difficult questions involved;

(3) Thirteen depositions were taken in addition to numerous acts of interrogatories propounded;

(4) Three pretrial conferences were held, 32 subpoenas were issued and many motions were filed or contested;

(5) The non-jury trial lasted six days;

(6) Various appellate tasks were performed before the Fifth Circuit Court of Appeals and the United States Supreme Court; and,

(7) The entire course of proceedings was bitterly contested.

Mr. Heiman's affidavit was supported by affidavits from three attorneys, Jepeway, Britton, and Waldin, as to what they would consider to be a reasonable fee in the case. These experts each stated that they had familiarized themselves with the proceedings and were familiar with the involved counsel. Britton and Waldin stated that a fair and reasonable fee would be either 40% of the ultimate total recovery or not less than $250,000. Jepeway recommended a 40% recovery.

In opposition to these affidavits, the defendants filed three affidavits of their own. The thrust of these was that the plaintiffs failed to distinguish the amount of time spent on the derivative claim (for which fees were recoverable) from the time spent on certain personal claims for which no fee could be recovered. Defendants' affidavits further complained of the lack of specificity in plaintiffs' affidavits. The defendants stated that the fee could only be based upon "actual services rendered" and that, in any event, they had never seen such a fee set at 50% of the amount recovered.

On January 15, 1974, the defendants deposed Messrs. Heiman, Jepeway, Britton, and Waldin. In response to questioning concerning the fee arrangement between himself and his client [Wolf], Heiman stated that Wolf was obligated to pay personally to the extent that his IGB stock had any value; Wolf had told Heiman that for any fees over that sum "we would have to look to whatever the Court would award".

Heiman testified that at the present he was charging $100 an hour for attorneys fees, plus $1,000 a day trial time. He stated further that for two of the younger partners who worked on the case, his firm charged $75 an hour. Heiman acknowledged that there was no delineation on the time slips between the individual and derivative claims but he said that after having reviewed the files, it was his opinion that 90% of the time was spent on the derivative claim.

The depositions of Jepeway, Britton, and Waldin were directed primarily to the considerations upon which they had based their affidavits. Each had examined Heiman's affidavit, the docket sheet, and other deci-

sions dealing with the award of attorneys fees. Each further stated that they had lengthy conferences with Heiman as to what had transpired in the proceedings. In giving their opinions as to a reasonable fee, each stated they had considered the amount of time involved, the results achieved, the skill of the attorneys, and the legal questions presented.

On January 17, 1974, Heiman wrote Judge Atkins a letter wherein he set forth the amount of money already received from Wolf. Wolf had paid Heiman $11,762.15, of which $10,274.63 had been applied to costs and the remainder to fees.

The following day, the District Court conducted its first hearing and informed counsel of the standard it intended to apply in determining the amount of attorneys fees it would award. Judge Atkins stated that the award would not be figured on a percentage basis but would take into consideration the value of services rendered, the results achieved, the hours expended, the usual charge in the community, and the experience and expertise of the lawyers performing the work. At the hearing, testimony was taken from one Walter McManus, an IGB stockholder and director. McManus testified that one of the plaintiffs' attorneys, Mazloff, had suggested that the case for attorneys fees could possibly be settled for 75 to 100 thousand dollars. Mazloff did not contradict this.

The next day, in response to the Court's request, Heiman filed a supplemental affidavit. It stated that he had reviewed all the pleadings, motions, briefs, plus other material and had reviewed all the time slips. Accordingly, the following totals were presented as the hours spent on the derivative claims:

| | |
|---|---|
| Heiman | 536.25 |
| Mazloff | 725.80 |
| Reckson | 58.03 |
| Other | 152.58 |
| | 1,472.66 |

To support these figures, 97 pages of time sheets were attached to the affidavits.

Heiman later filed two additional affidavits claiming a total of 263.66 hours for certain specified legal services. William Meadows also filed an affidavit claim for 32 hours and 15 minutes.

A final hearing on the matter of attorneys fees was conducted October 4, 1974. At this hearing, Heiman, Jepeway, Waldin, and Mazloff were questioned by counsel for the defendants. This did not result in the discovery of facts not already known.

On April 2, 1975, the District Court rendered its opinion. *Johnson v. Georgia Highway Express, Inc.,* had been decided more than a year previously (January 21, 1974).

The District Court stated that in fixing the amount of reasonable attorneys fees to be awarded it considered the following factors:

1. Hours spent on the derivative claim;
2. The individuals who worked on the derivative claim and the hours allocable to each such individual;
3. The hourly rates of the various attorneys who worked on the derivative claim (broken down in terms of in-court and out-of-court time);
4. The contingent nature of success of the cause of action;
5. The complexity of the case, the novelty of the issues, and any unusual quality of work;
6. The amount of recovery on behalf of IGB.

The Court then proceeded to find and hold, as follows:

In general, the Court concludes that the issues in this action were neither novel nor unusually complex. Moreover, the contingent nature of success was not remote. Plaintiffs' counsel, nevertheless, faced formidable obstacles in the pursuit of the derivative claim, obstacles which are adequately set forth in plaintiffs' numerous memoranda and which were alluded to by the Court of Appeals. *Wolf v. Frank,* 477 F.2d 467 at 473 (1973). Also, the recovery in behalf of IGB is substantial—over $650,000.

In light of the foregoing factors, then, the base hourly rates of the participating

attorneys have been increased proportionately. Upon consideration of the record in this cause and the Court being otherwise duly advised, the following calculations are made:

ATTORNEYS FEES

1. Eugene C. Heiman

   a) 40 hours (in court in behalf of IGB)
      x $250 per hour ($150 per hour base)
      $10,000 total

   b) 596.25 hours (out of court in behalf of IGB)
      x $200 per hour ($100 per hour base)
      $119,250 total

   c) $129,250 total fees allocable to Eugene C. Heiman for work expended in behalf of IGB.

2. Howard Mazloff

   a) 40 hours (in court in behalf of IGB)
      x $200 per hour ($100 per hour base)
      $8000 total

   b) 685.80 hours (out of court in behalf of IGB)
      x $150 per hour ($75 per hour base)
      $102,870.00 total

   c) $110,870.00 total fees allocable to Howard Mazloff for work expended in behalf of IGB.

3. Richard E. Reckson

   a) 4.25 hours (in court in behalf of IGB)
      x $250 per hour ($150 per hour base)
      $1062.50 total

   b) 54 hours (out of court in behalf of IGB)
      x $200 per hour ($100 per hour base)
      $10,800 total

   c) $11,862.50 total fees allocable to Richard E. Reckson for work expended in behalf of IGB.

4. Other legal consultation (unspecified)

   a) 152.58 hours in behalf of IGB
      x $50 per hour
      $7629.00 total

5. TOTAL AWARD—ATTORNEYS FEES AWARDED FOR WORK DONE IN BEHALF OF IGB—$259,611.50.

The findings of the District Court fail clearly to indicate the consideration, if any, given to the following *Johnson* factors:

1. The skill requisite to perform the legal service properly;

2. The preclusion of other employment by the attorney due to acceptance of the case;

3. Whether the fee was fixed or contingent;

4. Time limitations imposed by the client or other circumstances;

5. The nature and length of the professional relationship with the client; and

6. Awards in similar cases.

Moreover, the "undesirability of the case" would have had little bearing on the acceptance of, or participation in, this litigation.

Even so, within the four corners of the case, looking at its history and the results accomplished, we see nothing to be gained by sending the case back for a literal compliance with *Johnson*. It seems, in all likelihood, that the District Court felt that it was, in effect, complying with *Johnson,* although not uttering all the magic incantations.

Moreover, the record is such that we are as able now as we shall ever be to evaluate this controversy and put an end to this acrimonious, protracted litigation.

We cannot ignore the findings of the trial judge that the issues were neither novel nor unusually complex and that the chances of success were not remote. With these findings it is hardly conceivable that a judge in the exercise of sound discretion would have approved fifty percent of the recovery as a contingent fee. Indeed, Judge Atkins declined to follow that suggestion, as well he should have.

Neither do we discount the obstacles thrown in the way of recovery. The opposition was obviously stubborn and relentless. That, however, provides a somewhat unsatisfactory basis for enhancing the fee here because the fee was allowed to rest on the hours expended. Obviously, the more stubborn the opposition the more time would be required, so that counsel received their compensation for the extra effort thus required. Hence, we must notice that by the District Court order the regular hourly rate for Mr. Heiman's 596.25 *out-of-court hours* was doubled from $100 an hour to $200; that Mr. Mazloff's fees for 685.80 *out-of-court hours* were doubled from $75 to $150; and that Mr. Reckson's 54 *out-of-court hours* were doubled from $100 to $200.[2]

**2.** We see nothing unreasonable in the hourly rate allowed for court appearances in this unpleasant case. We recognize the dispute over the accuracy of the time sheets. As to this item we accept the figures used by the District Court as not clearly erroneous.

The record does not enlighten us as to the hours which might have been avoided had the relentless stubbornness been absent from the case. To try to fill that void would involve much, if not total, speculation and conjecture.

■ In any event, we are confident that ordinarily counsel would not be entitled to anything more than his regular, reasonable hourly rate, regardless of how much time the opposition causes him to spend. He is spending time and he is being paid for it. Stubbornness, persistence, acrimony, and relentlessness are common hazards of litigation. If time spent is the basis for the award, then the regular, reasonable hourly rate for the time spent, for whatever cause, should ordinarily be sufficient. Consequently, we are compelled to hold that doubling the regular hourly rate for counsel in this case legally amounted to an abuse of discretion.

■ This does not get away from the fact, however, that *money* was the sole issue in this litigation. Prevailing over determined opposition, counsel did succeed in accomplishing a substantial recovery for their clients—money which might well have been totally lost but for their efforts. These efforts, we might add, were made with full knowledge that if there was no recovery there would be no pay, with many hundreds of hours lost.

We think this justifies weighty consideration of factors set forth in the *Johnson* equation such as the amount involved, the results obtained, and whether the fee is fixed or contingent.

We accordingly hold on the facts of this case, as a precedent applying to these facts only, that counsel were entitled to an enhancement of the award over and beyond what they would ordinarily have been paid per hour on an agreed fee certain for the usual representation. We hold that the Judgment of the District Court should be modified with respect to hours expended out of court so as to allow a 33⅓% enhancement of the regular, reasonable hourly fee,

rather than the 100% enhancement allowed. As so modified, the Judgment of the District Court should be affirmed. The case will be remanded for the appropriate computations, upon which the District Court will enter its final judgment, from which no further appeal will be in order.

AFFIRMED, as modified

REMANDED, FOR THE ENTRY OF A FINAL JUDGMENT CONSISTENTLY HEREWITH.

## APPENDIX

Recent Attorneys' Fees Cases in the Fifth Circuit

1. *Fairley v. Patterson,* 5 Cir., 1974, 493 F.2d 598. No award made. Reversed and remanded for determination of proper amount of attorneys' fees under *Johnson* criteria.

2. *Baxter v. Savannah Sugar Refining Corporation,* 5 Cir., 1974, 495 F.2d 437. Award of $12,500 attorneys' fees. Court stated there was no way to determine why it was limited to this sum, since the district court failed to give reasons. Reversed and remanded for consideration of *Johnson* factors.

3. *Evans v. Seaman,* 5 Cir., 1974, 496 F.2d 1318. Award of $1,750 attorneys' fees. Court stated that the factors upon which the size of an attorneys' fee is based must be elucidated. Vacated and remanded for consideration of *Johnson* guidelines.

4. *Mims v. Wilson,* 5 Cir., 1975, 514 F.2d 106. Award of $3,500 attorneys' fee. Court said that the district court should weigh the request for fees in light of the standard enumerated in *Johnson* and by its order disclose the basis for the award. Vacated and remanded.

5. *Miller v. Mackey International, Inc.,* 5 Cir., 1975, 515 F.2d 241. Award of $20,500 attorneys' fees in securities case. Court stated, "there was scant explication of the [district] court's application of the guidelines that we took pains to formulate [in *Johnson*]. Rather the [district] court took

the mechanical hours—times—dollars approach, which reduces the award to an exercise in multiplication and which we have explicitly rejected". Vacated and remanded.

6. *Ward v. Kelly,* 5 Cir., 1975, 515 F.2d 908. Award of $2,500 attorneys' fee. Vacated and remanded for application of *Johnson* principles.

7. *Sabala v. Western Gillette, Inc.,* 5 Cir., 1975, 516 F.2d 1251. Award of $35,000 attorneys' fees. Court said that "the conclusory language of the trial judge's order effectively prevents any meaningful review of the award made". Reversed and remanded.

8. *McDonald v. Oliver,* 5 Cir., 1976, 525 F.2d 1217. Award of $10,000 attorneys' fees. Affirmed as no abuse of discretion demonstrated.

9. *Matter of First Colonial Corp. of America,* 5 Cir., 1977, 544 F.2d 1291. Award of $365,500 attorneys' fees in bankruptcy case. Court stated that "a district court must consider the twelve factors [in *Johnson*] in awarding attorneys' fees". Without this, "appellate review of the award becomes a meaningless gesture". Vacated and remanded.

10. *Davis v. Board of School Commissioners of Mobile County,* 5 Cir., 1976, 526 F.2d 865. Award of $38,000 attorneys' fees. Affirmed as to this amount but reversed and remanded on claim for additional compensation.

11. *Rainey v. Jackson State College,* 5 Cir., 1977, 551 F.2d 672. Fee fixed by this Court on uncontroverted evidence.