615 F.2d 1088
 6 Bankr.Ct.Dec. 323, Bankr. L. Rep. P 68,232
 ROSE PASS MINES, INC. and Leslie E. Wade,
Plaintiffs-Appellees-Cross-Appellants,
v.
Gene HOWARD, etc. et al., Defendants-Appellees-Cross-Appellees,
Archie M. Simon, Attorney for said Receiver & Trustee, Appellant.
 No. 79-3178
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 April 23, 1980.
 Simon, Fitzgerald, Cooke & Reed, Paul M. Cooke, Shreveport, La., for defendant-appellant-cross-appellee.
 Lunn, Irion, Switzer, Johnson & Salley, Charles W. Salley, Shreveport, La., for plaintiffs-appellees-cross-appellants.
 Harry R. Nelson, pro se.
 Barry & Hall, Brian L. Hall, Reno, Nev., for Rose Pass Mines and Wade.
 Nyle A. Politz, Joe C. LeSage, Jr., Shreveport, La., for Howard.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before GEE, RUBIN and RANDALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Rose Pass Mines, Inc. (RPM) was the subject of an involuntary petition in bankruptcy filed on January 23, 1976. Five days later RPM was adjudicated a bankrupt, and Gene Howard was appointed receiver. On the same date Archie M. Simon was appointed as attorney to represent the receiver. On March 9, 1976, Howard, as receiver, was granted the authority to continue the business of RPM, a company primarily engaged in operating oil wells. Howard continued to serve as receiver and to conduct the business of RPM until his appointment as trustee on March 19.[1] Thereafter, Howard, as trustee, continued to operate RPM until all its assets had been liquidated and all claims against it had been settled.[2] Simon was appointed to represent the trustee.
 
 
 2
 The trustee's final Account and Report was filed on February 8, 1978. This report indicated that all creditors, including unsecured creditors, were to be paid 100 percent of their claims against RPM. At the final meeting of creditors, held on March 7, 1978, the following fees were approved: $19,615.10 for Gene Howard in his capacity as receiver; $20,165.10 for Gene Howard as trustee; $7,000 for Archie M. Simon in his capacity as attorney for receiver; and $52,000 for Archie M. Simon as attorney for trustee. Apparently impressed with the performance of both Howard and Simon in effectuating a 100 percent return for all creditors and in making RPM once again a solvent corporation,[3] the bankruptcy judge awarded each the full amount of the fees that had been approved by the creditors.
 
 
 3
 RPM appealed to the district court. After hearing oral argument, the district court affirmed the judgment of the bankruptcy court with respect to Gene Howard. With respect to Archie Simon, the district court modified the bankruptcy court's award in three respects by holding that: (1) the 38.5 hours spent preparing the application for attorney's fees were not compensable; (2) the 29 hours billed by Simon's associates were compensable at the rate of $55 per hour; and (3) the remaining hours billed by Simon were compensable at the rate of $85 per hour. These modifications had the effect of reducing Simon's fees by approximately $13,000.[4] RPM appeals from the district court's affirmation of the bankruptcy's judge's award to Howard, and Simon appeals from the district court's modification of the bankruptcy judge's award with respect to him.
 
 Awards to Receiver and Trustee
 
 4
 A bankruptcy judge is authorized to award "reasonable" compensation to a trustee or receiver, 11 U.S.C.A. Rule 219(c)(1) (West 1977). In assessing what is reasonable, the bankruptcy judge "shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors." Id. The bankruptcy court's findings of fact are binding on the district judge unless clearly erroneous. Id. R. 810. See Bazemore v. Stehling, 396 F.2d 701, 702 (5th Cir. 1968). Because the district court affirmed the determination of the bankruptcy judge, we are bound by the same standard. See In re Bardwell, 610 F.2d 228 (5th Cir. 1980). Using this standard, we affirm the bankruptcy court's awards to Howard in both his capacities.
 
 
 5
 The bankruptcy court awarded Howard the maximum allowance authorized by statute for a receiver who is "conducting business," Bankruptcy Act § 48(a) (3), 11 U.S.C. § 76(a)(3) (1976) (repealed 1978),[5] and for a trustee who was "conducting business," id. § 48(c)(2), 11 U.S.C. § 76(c)(2), in view of his "outstanding" services in both capacities. These provisions permit the bankruptcy court to award a receiver or trustee who is "conducting business" twice the maximum allowance it may award receivers with full powers or trustees who do not conduct the business of the bankrupt. Id. §§ 48(a)(2), (c)(1), 11 U.S.C. §§ 76(a)(2), (c)(1). The bankruptcy judge concluded that his awards to Howard were "fair and reasonable, taking into consideration all relevant factors." The bankruptcy judge noted that "a large part of the work of the receiver and trustee . . . is reflected in various applications, objections and other filings in this court, as well as hearings and other proceedings before the court." Moreover, the bankruptcy judge found that the "unusually good result" of a 100 percent dividend to all creditors was occasioned "(p) rimarily by reason of the excellent services rendered by Gene Howard, as receiver and trustee," among others.[6]
 
 
 6
 RPM admits that Howard is entitled to receive $9,807.55 for acting as receiver and $10,082.55 for acting as trustee but challenges the bankruptcy judge's doubling those awards as an abuse of his discretion. RPM contends that Howard did not in fact conduct the business of the bankrupt corporation but delegated this authority to others who were paid for operating the business. To buttress its contention, RPM relies primarily on Howard's testimony that RPM's primary business activity at the time he was authorized to conduct the company's business was the operation of RPM's oil wells and that he hired Carl Morris, Inc. to handle the operation of those wells. Howard testified, however, that Morris operated only one part of the business. Moreover, it is undisputed that Howard oversaw the activities of Carl Morris, Inc., as well as the activities of other RPM employees and that Howard collected the income from the oil runs and paid the company's operating expenses. In our opinion, such involvement in the normal activities that RPM, as a going concern, pursued is sufficient to constitute "conducting business."[7] Considering these facts and Howard's extensive participation in the legal affairs of the bankrupt, we cannot say that the bankruptcy judge abused his discretion in doubling the amount of the awards to Howard.
 
 Attorneys' Fees
 
 7
 Simon's appeal comes before us in a different procedural posture from RPM's appeal. The district court did not simply affirm the bankruptcy judge's awards to Simon but modified them in three respects. We have previously held that bankruptcy judges have broad discretion in determining the amount of attorneys' fees in bankruptcy and that their exercise of that discretion cannot be disturbed by a district court on appeal absent a showing that it was abused. In re First Colonial Corp. of America, 544 F.2d 1291, 1298 (5th Cir. 1977). In reviewing the evidence, we "do not determine whether the district judge's findings were clearly erroneous but whether the findings of the referee were; if the referee's findings were not clearly erroneous the district judge was bound to accept them," Bazemore, 396 F.2d at 703, and so are we. With these standards in mind, we conclude that the bankruptcy judge abused his discretion in certain respects but not in others and therefore affirm in part and reverse in part the district court's order.
 
 
 8
 In awarding attorneys' fees, a bankruptcy court must consider the twelve factors outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), to facilitate meaningful review. In re First Colonial Corp. of America, 544 F.2d at 1298-99. While we are satisfied that the bankruptcy judge took most, if not all, of the Johnson factors into account,[8] our inquiry here concerns primarily the bankruptcy judge's application of the fifth Johnson factor, the customary fee.
 
 
 9
 The bankruptcy judge awarded Simon a total of $59,000 for 590 hours' work, an average of $100 per hour. On appeal, the district court held that Simon's associates were to be compensated at the rate of $55 per hour for the 29 hours they worked, presumably on the basis of testimony that his associates were ordinarily paid between $40 and $60 per hour.[9] The district court further held that Simon was entitled to be compensated at an hourly rate of $85, presumably because of his testimony that this was the highest rate he had ever charged in a bankruptcy matter. However, the district court disallowed any compensation for the 38.5 hours spent in preparing Simon's application for fees and disbursements.
 
 
 10
 Simon contends that the bankruptcy judge did not charge $100 per hour for the work done by his associates or for the time spent to prepare his fee schedule. Rather, he submits, "$100.00 per hour was used as a reasonable yardstick to be applied as an 'average' rate; some (work) might be worth $40 per hour, some $250 per hour." We cannot agree. Simon requested total compensation in the amount of $59,000 for 590 hours' work without differentiating among the types of work done or the persons who did them. This suggests that he merely multiplied the number of hours by an hourly rate of $100. There is absolutely no evidence to indicate that the bankruptcy judge parsed Simon's fee application, assigned differing monetary values to various items, and arrived at an "average" hourly rate of $100. To suggest that he did strains credulity, particularly in light of the bankruptcy judge's citation of $100 per hour as the lower limit of fees "customarily charge(d) by especially skilled attorneys in similar cases."
 
 
 11
 We conclude that the bankruptcy judge abused his discretion in failing to differentiate between time expended by associates and that spent by an experienced attorney like Simon. We have previously noted the strong policy of the Bankruptcy Act favoring economy in awarding fees to attorneys in bankruptcy proceedings.[10] In re First Colonial Corp. of America, 544 F.2d at 1299. This policy of economy cautions against awarding associates fees so obviously in excess of the rate at which they are ordinarily compensated. We conclude, therefore, that the district court did not err in reducing the associates' fees to $55 per hour, a reasonable rate in light of the testimony, and affirm its order doing so.
 
 
 12
 We find no abuse of discretion, however, in the bankruptcy judge's awarding compensation of $100 per hour for services rendered by Simon, despite Simon's testimony that his maximum fee in bankruptcy matters had been $85 per hour. We have previously permitted an enhancement of attorneys' fees in bankruptcy cases where "counsel did succeed in accomplishing a substantial recovery for their clients money which might well have been totally lost but for their efforts." Wolf v. Frank, 555 F.2d 1213, 1218 (5th Cir. 1977) (allowing enhancement of 33 percent). Considering the excellent quality of the legal services provided by Simon, see nn. 6 and 8, supra, we cannot say that the bankruptcy judge's enhancing Simon's compensation by $15 per hour, a 16 percent increase, constituted an abuse of his discretion. We therefore reverse the decision of the district judge to limit Simon's compensation to $85 per hour.
 
 
 13
 Finally, we conclude that the bankruptcy judge abused his discretion in awarding Simon $3,850 in compensation for hours spent preparing his fee application. Such an award is clearly exorbitant considering the nature of the "services" being compensated. However, we likewise conclude that the district court abused its discretion in awarding no compensation. We have long required an attorney to file a detailed account of the legal services he provided the bankrupt in order to recover any compensation at all for his services. See, e. g., In re First Colonial Corp. of America, 544 F.2d at 1299. It would be unduly penurious to require such an accounting without granting reasonable compensation. Nevertheless, we are mindful of the principle of economy discussed above. In the absence of any explanation as to why almost an entire work week was spent compiling data from time sheets, we do not see how such a task could consume more than ten to twelve work hours or merit compensation at the rate of $100 per hour. Accordingly, we remand to the bankruptcy court for a determination of reasonable compensation for preparation of the fee application that is consistent with the views expressed in this opinion.
 
 
 14
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 *
 Fed.R.App.P. 34(a); 5th Cir. R. 18
 
 
 [1]
 Howard was not officially discharged as receiver until April 8, 1976
 
 
 [2]
 On May 8, 1976, the bankruptcy judge ratified and confirmed the trustee's application to operate RPM. From March 19 to May 8, Howard had temporary authority to operate the business
 
 
 [3]
 Specific findings of fact made by the bankruptcy judge with respect to each man are discussed below
 
 
 [4]
 Simon apparently requested compensation for 520 hours of professional services rendered in his capacity as the attorney for the trustee and 70 hours as attorney for the receiver. The district judge awarded Simon $52,000 in fees as the attorney for the trustee and $7,000 as the attorney for the receiver, an average of $100 per hour. See p. 1092, infra. Denying compensation entirely for 38.5 hours reduced Simon's award by $3,850; compensating 29 hours at $55 per hour rather than $100 per hour reduced his award by $1,305; and compensating the remaining 522.5 hours at $85 per hour rather than at $100 per hour reduced the award by another $7,837.50. Based on these calculations, Simon's award was reduced by a total of $12,992.50; his net award was thus $46,007.50
 
 
 [5]
 Even though the Bankruptcy Act was repealed by the Act of Nov. 6, 1978, Pub.L. 95-598, 92 Stat. 2549 (codified at 11 U.S.C.A. §§ 101 et seq. (West 1979)), effective October 1, 1979, a case commenced under the "old" Act is governed by the provisions of that Act. Act of Nov. 6, 1978, Pub.L. 95-598, § 403(a), 92 Stat. 2683
 
 
 [6]
 Archie M. Simon, as attorney for the receiver and trustee, and Larry Tanner, as accountant for the trustee, were also cited for their "excellent services." The efforts of all three individuals in negotiating the settlement of two large claims a $493,900 claim was settled for $25,000, and a $142,200 claim was settled for $15,000 were specifically recognized by the bankruptcy judge
 
 
 [7]
 In re United States Products Corp., 57 F.Supp. 239 (N.D.Cal.1944), cited by RPM, is not to the contrary. There "the trustees did not . . ., neither substantially nor even in minor part," participate in the "day by day, normal activities" of the bankrupt. Id. at 241. The other cases cited by RPM are inapposite, as RPM admits in its brief
 
 
 [8]
 The bankruptcy judge credited Simon's "excellent services," along with those of Howard and his accountant, as primarily responsible for the "unusually good result" in this case. See n. 6, supra. His opinion details extensive litigation and negotiations in which Simon was involved as attorney for the receiver and the trustee. The bankruptcy judge found as a matter of fact that:
 Services rendered by Archie M. Simon, both as attorney for receiver and as attorney for trustee, including services rendered by other members of his firm, evidenced a very high degree of expertise and competence in various areas of the law, and particularly in the areas of bankruptcy and oil and gas law, as well as in negotiations; strenuous opposition was encountered by him in complex and involved matters, some of which were litigated before this court, and outstanding results were obtained. It appears that further services have been rendered since the filing of Mr. Simon's application for compensation, including particularly conferences with the court and with trustee in regard to a proper manner whereby surplus funds returnable to Rose Pass Mines, Inc. should be paid. Subsequent orders of the court in Nevada have since been furnished to this court by attorneys for Rose Pass Mines, Inc., and will be considered in consultation with the trustee and Mr. Simon. Considering all of the factors, including the very substantial amount of professional time spent in the performance of these services, using time as only one of the yardsticks, however, the compensation heretofore approved and allowed is fair and reasonable.
 
 
 [9]
 The district court's written order contains no explanation of how the court reached the $55 figure. In an oral ruling however, which was not transcribed, the court apparently explained that it was awarding an hourly fee of $50 for the associates' time, plus an extra $5 per hour because of the excellent job on appeal
 
 
 [10]
 Although the principle of economy has been eliminated in the "new" Bankruptcy Act, 11 U.S.C.A. § 330(a)(1) (West 1979), the "new" Act is not applicable to this case. See n. 5, supra