WILLIAM E. DOYLE, Circuit Judge.
This is an appeal from a bankruptcy judgment rendered in New Mexico. Permian Anchor Services, Inc. is the bankrupt. It was adjudged a bankrupt following the filing of an involuntary petition. The adjudication occurred on March 17, 1976. The judgment awarded first priority to the First National Bank of Lea County for its security interest in certain assets. The award fully satisfied the debt to the bank. It received payment of the debt, interest and attorneys’ fees. Marvel Engineering and Niccum appealed the judgment to the United States District Court for the District of New Mexico. That court affirmed the judgment in all respects except two. One particular was perfection of one of the security interests and the other concerned the amount of attorneys’ fees. The cause was remanded for correction of these two matters and was returned and affirmed. The appeal is by the bank on the two matters which it lost in the partial remand. Marvel has cross-appealed the judgment in favor of the bank.
The issue is concerned with the relative priorities of the two creditors, the bank and Marvel, and the award to those creditors after sale of the Permian assets. A secondary issue pertains to the amount of the award for attorneys fees.
The loans by the bank to Permian began September 24, 1973. To secure that loan, Permian gave security interests in equipment, inventory, accounts receivable and motor vehicles. The first of these security agreements is dated April 15, 1974. Additional security agreements were given in 1974 and 1975. Niccum, the president of Marvel personally guaranteed Permian’s debts to the bank at the time of the first loan, Sept. 24, 1973.
Subsequently Niccum made loans to Permian in the total amount of $77,444.99. Permian gave a security agreement to Niccum in connection with those loans. Both the note and the security agreement were subsequently assigned to Marvel.
Demand was made on the bank’s note after payment on the $31,411.26 loan became delinquent April 3, 1975. The bank also notified the attorney for Marvel and Niccum of Permian’s default by means of a letter dated July 18, 1975.
In July 1975 Niccum sought a settlement with the bank. He offered $18,000.00 to the bank in settlement of his obligation growing out of the personal guaranty. The bank rejected the offer. The bank undertook to locate and repossess the collateral from Permian beginning in July 1975. Later, on July 28, 1975, Niccum and Marvel joined in a federal suit against the bank for breach of the guaranty agreement and to restrain the bank from repossessing Permian’s assets. The motion for a restraining order was denied August 6, 1975. On that same day Marvel once again offered to settle with the bank. The offer was again refused.
On August 7,1975, Marvel with the cooperation of Permian started repossessing the collateral. The bank filed two suits in state courts seeking restraining orders against *765 this activity, but Marvel already had the assets in its possession.
Another effort was made to settle, but was again rejected. Meanwhile a federal suit had been commenced by Marvel. This was the July 1975 suit which is shown above. The bank counterclaimed on its note seeking return of the collateral. The motion was denied and the assets were ordered seized and sold by the U.S. Marshal. This sale took place in November 1975. The amount of $94,382 was realized. The proceedings in bankruptcy were filed November, 1975. This, of course, halted the district court proceedings. Marvel, Niccum and the bank filed their respective claims. This appeal is from the final judgment in those proceedings.
In the bankruptcy court it was determined that the bank had a valid lien on proceeds from the sale of collateral and this amounted to a total of $61,307.30, including costs and attorneys fees. The security involved vehicles, equipment and drilling units which were attached to trucks.
The appeal is by the bank which maintains that the trial court erred in reversing the judgment of the bankruptcy judge.
There are a number of points which appear to be in issue in the case but it boils down to the following:
1. That the trial court erred in reversing the bankruptcy judge who had awarded to the bank the proceeds of sale of the collateral which was generally described as miscellaneous equipment and consisted of various sized rock augers, items sold to Mutual Drilling Co. and items sold to various other persons. The sale proceeds of this equipment amounted to $7,930.00. A large part of this, $3,269.22, was originally awarded by the bankruptcy judge to Marvel. The priority of this security interest was reversed by Judge Mechem. This resulted in virtually the entire proceeds of the miscellaneous equipment, $7,930.00, being awarded to Marvel.
2. Alleged inadequacy of attorneys’ fees awarded to the Bank.

Appeal of the Bank

The claim of the bank is based on exhibit P, a security agreement, and exhibit R, a financing agreement. Exhibit P, the security agreement, is dated January 8,1975. It was filed the following day. But that security agreement is devoid of any collateral description. Exhibit R, the financing statement and the companion document to the security agreement, does have a description of equipment-collateral. This financing statement omits the address of the debtor. The security agreement does have the address but not the description. Both documents were properly filed.
Exhibits O and Q were filed January 10, 1975 with the New Mexico Secretary of State. The security agreement, exhibit O, exhibits inventory both existing and after acquired, accounts receivable existing and after acquired and proceeds of both. Equipment is not listed on O, but like R, it is listed on the financing statement Q. All of these documents are printed forms. The security agreement has boxes to be checked. Included are inventory, accounts receivable and proceeds. The boxes provide the sole description of collateral on exhibit 0. The checking of the boxes was seemingly overlooked on exhibit P.
How are the security agreement and financing agreement to be construed in a situation of this kind? Will one of the documents fulfill the requirement of description of collateral? Under the law of New Mexico it will not. Where an unsigned financing statement has a broader list of collateral than the security agreement has, the security agreement controls. Jones and Laughlin Supply v. Dugan Production Corp., 85 N.M. 51, 508 P.2d 1348 (1973). The Bank seeks to distinguish Jones and Laughlin on the basis that in the present case the financing statement is signed by the debtor; a further reason advanced for the attempted distinguishing is that the New Mexico authority is said not to have considered the question which is here presented, namely whether a signed-financing statement and a signed security agreement are to be construed together. *766 The approach which is urged by the bank seems to be more sensible but the language of Jones and Laughlin does not support the Bank’s position:
A security agreement is effective according to its terms * * * A security interest is not effective against third parties unless the debtor has signed a security agreement which contains a description of the collateral. The disputed items cannot be within the security agreement by the “outside evidence” relied on by plaintiff because the disputed items are not described in the security agreement.
It is true, as the trial court found, that the filing of the financing statement was sufficient to put defendants on inquiry as to plaintiffs’ security interest. This avails plaintiff nothing when the security agreement did not cover the disputed items. We held that the security agreement did not cover the two disputed items.
508 P.2d at 1351 (emphasis supplied).
There are no degrees of invalidity. Á financing statement is as invalid because of a lack of a debtor’s signature as it is for lack of the debtor’s address. Jones being the extent of New Mexico authority on this problem, this court is obliged to give full effect to it.
As between security agreement 0 and financing statement Q, New Mexico would in all likelihood find the security agreement to be controlling. Since 0 shows no adequate security agreement in the equipment, and since Q will not fill the gap the Bank’s contention must be rejected. This reasoning applies to security agreement P and financing statement R as well. Q is invalid for the same reason that R is. There is no debtor’s address. The only valid financing statement is the filed security agreement 0, but it does not cover equipment.
Due to the deficiency, there is no security agreement on equipmént and hence no security interest has attached. (55-9-204, 9-203, N.M.S.A. 1978). Parol evidence cannot be offered to establish a valid security agreement, 9-203 and Comment 5, and an unattached security interest cannot be perfected, 9-303; 9-203. A security agreement is sufficient as a financing statement if it contains all the information required of a valid financing statement, even though there are minor errors in the information. 9-402. Leaving out the address of the debtor is major. 9-402(5) and Comment 9.
The Bank has a further contention: That its security agreement, exhibit N, in any event covers the collateral in question.
That security agreement was signed April 15,1974, and was filed in Lea County April 16, 1974. But this primarily covers drilling rigs and vehicles. These particular items are listed in an attachment to the security agreement. It is entitled “Equipment List, Permian Anchor Service, Inc.” The agreement contains the following:
Further if checked here [x] Debtor grants a security interest in all similar property owned by Debtor during the time the obligation is outstanding, although such property may be acquired after the date hereof.
Also, if checked here, [x] the aforesaid collateral, in addition to securing all existing obligations, shall secure all further advances made by the SECURED PARTY to the debtor or for the DEBTOR’S benefit or for the protection of collateral and any costs, expenses or fees incurred in collecting the indebtedness.
(emphasis added)
The bank argues that the drilling units and trucks are similar equipment to the miscellaneous equipment claimed. Because this security agreement was filed and has all of the information of a financing statement, it is maintained that the bank had a legally sufficient and perfected security interest in the miscellaneous equipment.
Examination of the miscellaneous equipment list discloses that it has 6 augers, 2 belling tools, 1 welder, 4 metal chairs, 2 filing cabinets, 1 butane bottle, 1 leased auger, and 4 collections of unidentified items. The seeming similarity of this “miscellaneous equipment” to a drilling unit having a value several thousand dollars *767 more than any one of these items is remote. The equipment list fails to name a single item which is of the same class as the miscellaneous items. It was not shown at the bankruptcy proceeding that when Exhibit N was prepared it was contemplated that it would embrace items such as those which were included on the subsequent documents. This argument was raised for the first time on appeal, and for this court to be able to give it effect it would have to be a matter involving manifest injustice. There is no such element. This entire effort was pure afterthought. Gomes v. Williams, 420 F.2d 1364 (10th Cir. 1970); Neu v. Grant, 548 F.2d 281 (10th Cir. 1977).

Cross Appeal of Marvel

Marvel has raised another aspect of the security interest present in exhibit N. The equipment list describes trucks and together with it describes drilling units (which are attached to the trucks). The argument of Marvel is that the drilling units were accessions to the trucks. This, the argument continues, requires the perfection of any security agreement in the accessions to have been made on the certificates of title 66-3-201, N.M.S.A. (1978). The bankruptcy court found that the drilling units were bolted and welded to the trucks but that they could be removed — that they survive long after the trucks have been worn out. Exhibit N pre-dated the security agreement and financing statement of Marvel.
The record supports the finding of the bankruptcy judge. The issue of accession is a question of fact which does not lack support. Since the finding is not clearly erroneous, it stands. Stafos v. Jarvis, 477 F.2d 369 (10th Cir. 1973), cert. denied, 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168.

The Issue of Attorneys’ Fees.

Both the bank and Marvel contest the award of attorneys’ fees by the district court. At the original hearing the bankruptcy judge conducted a full hearing and made findings and conclusions as to the amounts each law office that worked on the case was entitled to receive.
On appeal to the district court Judge Mechem noted that four of the five notes held by the bank contained an agreement for reasonable attorneys’ fees. The fifth note was an extension note which, according to testimony after remand, is merely a time extension on an earlier note which had come due but had not been paid. The understanding and practice is that the original note remains in force in all its terms except the due date. The bank argues that this includes reasonable attorneys’ fees but Judge Mechem rejected this contention.
The district court in addition found all fees unreasonable and ordered that they not exceed 20% of the face amount of the four notes.
On remand one of the bankruptcy judges, in this instance Judge Johnson, held a thorough evidentiary hearing on the question of attorneys’ fees. Marvel objected to this extensive hearing being held saying it went beyond the scope of the remand and argued that the amount was to be limited to a flat 20%. Marvel maintains that there was adequate testimony in exhibits at the original proceeding. Judge Johnson made detailed findings again to the effect that the original amount was reasonable and was comparable to the standard in the community at the time. He also made a determination as to the amount of costs, $2,946.87; a determination which Marvel contends should not have been made under its interpretation of the remand order. Despite Judge Johnson’s findings he was compelled by the remand order to award a fee limited by 20% of the face amount of the four notes. The total amount of the fees was $3,555.75.
The October 5, 1974 note plainly is an extension of a September 24, 1973 note. Marvel does not contest this. The September 24, 1973 note provides for reasonable attorneys’ fees for collection. The general rule, which New Mexico follows, is that such an extension note does not constitute a novation unless a contrary intention is shown. Cf. Farmington National Bank v. Basin Plastics, Inc., 94 N.M. 668, 615 P.2d 985 (1980); Hot Springs Bank v. Stoops, 94 *768 N.M. 568, 613 P.2d 710 (1980); First National Bank of Albuquerque v. Lessen, 9 N.M. 604, 58 P. 345 (1899); 55-3-119 N.M.S.A. (1978). The above decided cases are analogous to the point of the extension problem which we now consider.
The extension note extended only the due date and did not change the terms of the original note, including that allowing reasonable attorneys’ fees for collection. Accordingly reasonable attorneys’ fees should have been allowed for collection of all five notes held by the bank.
The final question is whether award of 20% of face value of the notes is consistent with the contractual terms in the notes, those allowing “reasonable” attorneys’ fees. The district court’s 20% lacks a relationship to the evidence presented at either hearing.
This court in another context has held that reasonable attorneys’ fees are to be based upon an evidentiary inquiry which meets generally the guidelines set forth in the case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Nearly identical guidelines have been adopted by the American Bar Association Code of Professional Responsibility, DR 2-106. Cf. Salone v. United States, 645 F.2d 875 (10th Cir. 1981); Battle v. Anderson, 614 F.2d 251 (10th Cir. 1980). The rationale of these cases ought to apply to a determination of reasonable attorneys’ fees in a bankruptcy proceeding that involves construing contracts and notes which expressly call for the award of reasonable attorneys’ fees. Indeed the cases have held that these standards are fully applicable to the award of attorneys’ fees in connection with bankruptcy proceedings. Representative cases from the Fifth Circuit are: In the Matter of U. S. Golf Corp. 639 F.2d 1197, (5th Cir. 1981); In the Matter of Multiponics, Inc., 622 F.2d 731 (5th Cir. 1980); and In the Matter of First Colonial Corp. of America, 544 F.2d 1291 (5th Cir. 1977).
The cause should be affirmed in all respects with the single exception of the attorneys’ fees. As to the attorneys’ fees the cause must be remanded with directions to conduct a hearing applying the standards that are set forth in Johnson v. Georgia Highway Express, Inc., supra[1].
The evidence that was offered before the Bankruptcy judge and before the court at the prior hearing can be utilized. Thus it may not be necessary to adduce additional evidence. The matter of importance is the application of the above mentioned standards to the evidence. It is so ordered.

. The trial court found that the failure of the bank to recover fully was due to its own deficiencies. We recognize that such failure of the bank to present its case in its best possible light could affect the amount of the attorneys fees if the particular diminution of fees is tied to specific deficiencies on the part of the bank. The failure of the bank to compromise its claims and thereby mitigate damages is not to be regarded as a deficiency on the part of the bank.