### In re Harry D. KRUG, Debtor.

### Bankruptcy No. 93–41762–12.

United States Bankruptcy Court, D. Kansas.

Nov. 21, 1994.

---

Bruce J. Woner, Timothy H. Girard, Woner, Glenn, Reeder & Girard, Topeka, KS, for debtor.

Robert E. Nugent, III, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, for bank.

Tanya Sue Wilson, Asst. U.S. Atty., Topeka, KS, for IRS.

Eric C. Rajala, Chapter 12 Trustee, Overland Park, KS.

### ORDER ALLOWING ATTORNEYS' FEES AND EXPENSES

JULIE A. ROBINSON, Bankruptcy Judge.

Counsel for the debtor, Woner, Glenn, Reeder & Girard, has filed a Second Interim Application for Attorneys' Fees and Expenses in the amount of $14,113.61 for the period of January 1, 1994 through March 31, 1994. Peoples State Bank & Trust Co. (Bank) objects to the form of the fee application as well as the amount of the fees charged. In particular, the Bank objects to certain "batched" entries in the application as well as the amount of time claimed in connection with preparing and filing pleadings to remove a state court action to this Court. The Bank also objects that the total amount of fees requested in this second application together with the allowed fees in the first application ($9,369.80) are unreasonably high. The Bank did not object to the first application for fees.

A hearing was held on September 19, 1994, at which time the Court directed the applicant to cure the objection to batched entries by submitting a supplemental application that itemized in particular, the entries relat-

ing to the removal proceeding. The applicant filed a supplement on September 27, 1994, and the matter is now ready for decision.

In its Amended Objection to Second Interim Application for Attorneys' Fees and Expenses, the Bank raises four concerns:

(1) the application fails to provide a recapitulation of fees already paid by the debtor including the amount, source and date of the payments as well as what compensation and fees have been previously approved by the Court;

(2) the billing statements include a number of "batched" entries that fail to itemize the time spent on each task within the entry, the number of dollars charged for each hour of such attorney's time and the total charge for the activity;

(3) the eight (8) hours of time expended in reviewing, researching and preparing for the removal of state court foreclosure actions to this Court was excessive; and

(4) in general, the fees are too high, particularly when considered in concert with the fees allowed in the applicant's first interim application for fees.

■ At the outset, it should be noted that the Bank's objection is in large part based on the applicant's failure to comply with the Fee and Expense Reimbursement Guidelines published by the Honorable John T. Flannagan. To date, the undersigned judge has not established or published fee guidelines, nor indicated that the guidelines of Judge Flannagan would be adopted. Attached to this opinion is an Appendix that publishes the guidelines of this judge. Many of Judge Flannagan's guidelines are incorporated into these guidelines. However, to the extent that the applicant has failed to comply with this Court's new guidelines, the fee application will not be denied, as the debtor has not had prior notice.

■ This Court will require in all future fee applications in this case and all other cases, that the applicant present a recapitulation of what payments have been made, the source of the payments, the date of the payments and what compensation and reimbursement amounts have been previously ap-

proved by the Court. In the instant application, the Court finds that the applicant has recited the date of the first interim fee application, the date it was approved, and that the entire application for $9,369.80 was approved. That is a sufficient recapitulation; but in the future, applicants will need to disclose the date and source of payments outside of bankruptcy court, as well.

■ The Bank also objects to batched entries, but at the hearing on its objection, indicated that its objection was limited to those relating to the removal proceeding. The applicant has filed a supplemental application that itemizes the batched entries. In the future, as set out more fully in the attached Appendix, fee applicants must provide individual and separate entries for each service performed.

■ The Bank further objects that excessive time is claimed for work relating to the removal of state court actions to the bankruptcy court. The applicant spent 1.2 hours on the petition for removal, 1.5 hours on the removal complaint and a related adversary complaint, 2.0 hours analyzing how to accomplish a removal, 2.8 hours revising removal pleadings and plan, and 1.0 hour gathering all state court pleadings and filing and serving the removal pleadings, for a total of 8.5 hours.

In determining whether the amount of time expended on this activity is reasonable, the Court is guided by *In re Permian Anchor Services, Inc.*, 649 F.2d 763, 768 (10th Cir.1981), which adopted the lodestar analysis set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which looks to the following factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In this case, the applicant is a firm composed of experienced bankruptcy attorneys. Although filing a removal action may not be unusual to those who have a federal civil practice, in the context of bankruptcy it is.

In this case, the Court finds that the time the applicant spent in analyzing the removal statutes and determining the proper procedure was time reasonably spent in view of the applicant's unfamiliarity with removal and the relative novelty of a removal proceeding in the context of a bankruptcy case. The applicant had to necessarily consider the removal statute at 28 U.S.C. § 1446, along with the more particular statute for removal of claims related to bankruptcy cases, at 28 U.S.C. § 1452. The applicant had to also consider whether the action was removable at all, pursuant to 28 U.S.C. §§ 1441 and 1445; and if so, the procedure for removal and after removal, pursuant to 28 U.S.C. §§ 1446, 1447, 1448, 1449 and 1450, and Rule 9027 of the Federal Rules of Bankruptcy Procedure. In addition, the applicant had to consider the effect, if any, of filing a counter-claim and/or jury demand in the removed action. And, given the time constraints of Rule 9027, the applicant had to file the notice of removal within the longest of (A) 90 days after the order for relief, (B) 30 days after entry of an order terminating a stay, or (C) 30 days after a trustee qualifies in a Chapter 11 case but not later than 180 days after the order for relief. Thus, the applicant had to become familiar with an unfamiliar area of law in a short period of time. The applicant successfully filed the removal pleadings; and the state court actions, in which the Bank's prayer exceeds $290,000, were removed to bankruptcy court.

Considering the novelty of the work performed, the complexity involved and the successful outcome, the Court finds that the applicant expended a reasonable and necessary amount of time in working on the removal proceeding.

■ Finally, in evaluating whether the application claims excessive time for other services rendered, the Court again turns to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *supra*. It should be noted that the Bank asks the Court to consider the fees in the first application, which were allowed in their entirety without objection by the Bank or any other party in interest. The Court declines to revisit the previous determination it made when it allowed the requested fees as reasonable compensation for actual, necessary services and the requested expenses as reimbursement for actual, necessary expenses.

Moreover, when considering the second interim fee application the Court is persuaded that the applicant did not generate excessive fees. In the application period, the applicant has accomplished many things in furtherance of the debtor's reorganization, including: completing an examination of the Bank's file; filing a Chapter 11 plan and negotiating with the Bank regarding its objections; filing an objection to the Bank's proof of claim; successfully removing state court actions to bankruptcy court; responding to a host of discovery requests in several adversary proceedings between the debtor and the Bank and conducting its own discovery, including interviews of numerous witnesses and two days of depositions; and successfully defending the Bank's Motion to Abstain from the removed state court actions. Given all of this activity, the Court finds that the 125 hours claimed, for the time period January 1, 1994 through March 31, 1994, were both necessary and reasonable. The Court is further persuaded that the applicant has not requested excessive fees by the fact that the Bank filed a fee application for the same time period, in which it requested approximately $2,500 more in fees than that requested in the instant application.

**IT IS THEREFORE ORDERED** that Woner, Glenn, Reeder & Girard's request for fees in the prosecution of these bankruptcy proceedings from January 1, 1994 to March 31, 1994, in the amount of $12,617.25 is and shall be allowed in full.

**IT IS FURTHER ORDERED** that Woner, Glenn, Reeder & Girard's request for expenses from January 1, 1994 through

March 31, 1994, in the amount of $1,496.36 is and shall be allowed in full.

**IT IS FURTHER ORDERED** that the total amount allowed for fees and expenses is $14,113.61, which shall be paid to Woner, Glenn, Reeder & Girard as an administrative expense.

## *APPENDIX*

### PROFESSIONAL FEE AND EXPENSE GUIDELINES

The Honorable Julie A. Robinson
United States Bankruptcy Judge

**I. Retention Application and Affidavit**

A. *Timing*

1. Section 327—requires court approval of professionals hired by debtor in possession or trustee.

2. Fees will not be approved unless appointment has been approved. Nunc Pro Tunc orders will be allowed where equitable principles so require. Mere neglect by the professional does not constitute extraordinary circumstances. *In re Land,* 943 F.2d 1265, 1267–68 (10th Cir.1991). *In re Ibbetson,* 100 B.R. 548 (D.Kan.1989).

B. *Effect of Approval of Retention*

1. Notwithstanding approval of the application for retention, the Court may disallow compensation or expenses provided for under the terms and conditions of the retention application(s), if such terms and conditions prove to have been improvident in light of developments not anticipated at the time such application(s) was approved.

**II. Fee and Expense Applications**

All applications for fees and expenses shall contain the following information. These guidelines provide the minimum standard. The Court may require additional information in a particular application, when the nature of the case and representation so warrants. Nothing contained herein shall limit the Court's power under Bankruptcy Code §§ 326–329 and Local Bankruptcy Rule 2014.1(C).

1. The identity of the applicant and who the applicant represents;

2. The date the bankruptcy petition was filed;

3. The date the applicant moved for appointment;

4. The date of the order granting approval of employment;

5. A statement of whether it is an interim or final application (if interim, identify whether it is the first, second, etc. interim application);

6. A recapitulation of what payments have been made, the source of the payments, the date of the payments and what compensation and reimbursement amounts have been previously approved by the Court;

7. The fee amount and the expense amount requested under such application.

8. Specific information about the requested expense amount, including:

   a. the date expense incurred;

   b. the exact nature of the expense (i.e., the number of copies and cost per copy);

   c. the purpose or need for the expense;

   d. any profit margin, markup or overhead factor being realized on any item of expense.

9. Specific information about the requested fee amount, including:

   a. The name of the individual(s) who have worked on the case, including their title or position and their hourly rate;

   b. Individual and separate entries for each service performed, identifying:

      i. who performed the work;

      ii. the date the work was performed;

      iii. a description of the work performed **and an explanation of the specific nature of the activity, such as the issue, contested matter, or problem worked on, and where not self evident, a statement of the purpose of such work;**

      iv. the identity of other parties involved in the work performed;

      v. the amount of time expended in tenths (1/10ths or .10) of hours; and

      vi. the dollar value at the applicable billing rate.

10. Applications for expenses for Creditor's Committee members and non-attorney professionals must include copies of all receipts for expenditures. Applications for expenses incurred by attorneys and their staff need not include copies of receipts.

## III. Expenses

A. *What is compensable*

1. Extraordinary photocopying—actual, reasonable and necessary
2. Extraordinary postage expense—actual, reasonable and necessary
3. Long distance telephone calls
4. Fees charged by clerk's office for copies from the file
5. Certified mail if shown to be required by law
6. Out of town travel, including coach class airfare, tolls, parking, reasonable and necessary lodging and meals, non-local (more than 20 miles, one way, between office and destination) mileage at Internal Revenue Code rate
7. Express mail or delivery—**actual, reasonable and necessary costs**
8. Telefacsimile charges—**actual, reasonable and necessary,** outgoing faxes allowed only as to the cost of the long distance call, if any; incoming faxes allowed
9. Computerized legal research—**actual and reasonable cost over monthly subscription fee**

B. *What is not compensable*

1. Ordinary photocoyping—routine correspondence
2. Ordinary postage expense—routine correspondence
3. Telephone Service
4. Word processing
5. Court fees
6. Office overhead, including, but not limited to:
   rent; utilities; insurance; taxes; clerical or secretarial wages, salary, benefits and overtime; local telephone charges
7. Local travel (20 miles or less, one way, between office and destination)

8. Messenger service
9. Library costs, expenses

## IV. Fees

A. *Rate of Compensation for Professionals*

1. Attorney Fees

Subject to the Court's reserved power to limit fees under § 328 of the Bankruptcy Code, local area attorneys may be compensated at their usual and customary rate. Professionals employed in cases that are of national scope and present complex issues requiring the skill and experience of attorneys from other parts of the country may be allowed compensation at their usual and customary rates, again subject to the Court's discretion under § 328.

A. In determining whether a requested fee is reasonable, the Court shall be guided by *In re Permian Anchor Services, Inc.,* 649 F.2d 763, 768 (10th Cir. 1981), which adopted the lodestar analysis set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), which looks to the following factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

B. The Court shall make a separate determination of the necessity of the requested services, as defined in *In re Lederman Enterprises, Inc.,* 997 F.2d 1321 (10th Cir.1993), including whether the services benefitted the bankruptcy estate.

832

### 2. Paralegal Fees

The principles set out above for usual and customary rates of local and national attorneys shall apply to the rates of their respective paralegal employees. Time entries for paralegals should not include secretarial or clerical tasks.

### 3. Other Professionals

Other professionals who ordinarily bill on an hourly basis may be allowed their usual and customary rate, subject to the Court's discretion. Flat fees for accountants, financial advisors, investment bankers, or consultants are disfavored and will not be approved unless approved upon prior application for cause shown.

**B.** *Compensable components of Attorney and Paralegal Fees*

1. Fee Applications—reasonable time spent in preparation of fee application. *In re Seneca Oil Co.*, 65 B.R. 902, 910 (Bankr. W.D.Okla.1986).

2. Prepetition—only time spent in preparation for or contemplation of filing bankruptcy.

3. Personal services—services that benefit bankruptcy estate are compensable. Services that benefit debtor personally, are not compensable (e.g. defense of §§ 523 and 727 actions).

4. Travel—nonlocal (as previously defined) travel compensated at counsel's usual and customary hourly rate. Travel must be apportioned among all the cases on which attorney appears.

5. Interoffice conferences among attorneys are compensable subject to a showing that they are reasonable, necessary and not duplicative.

**C.** *Components of Attorney and Paralegal Fees that are Not Compensable*

1. Clerical or secretarial work—filing, organization of files, mailing, copying.

2. Time spent "educating an untrained apprentice or familiarizing oneself with general Code provisions or basic law" is not compensable. Attorneys are required to have some minimum level of expertise.

*In re Seneca Oil*, 65 B.R. 902, 912 (Bankr. W.D.Okla.1986).